**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| SHARON L. LEUZINGER, | No. C 06-0398 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 24, 36, 37, 38] |
| COUNTY OF LAKE, | |
| Defendant. | |

Before the Court is defendant County of Lake's motion for summary judgment [Docket No. 24]. The County of Lake has also submitted three objections to declarations submitted by the plaintiff [Docket Nos. 36-38].

After reading and considering the arguments presented by the parties, the Court finds these matters appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motion for summary judgment is DENIED. The three objections to the declarations are SUSTAINED.

## BACKGROUND

Plaintiff Sharon L. Leuzinger is alleging that her former employer, defendant County of Lake, violated various federal and state disability statutes by refusing to allow her to return to her position after she took medical leave for breast cancer treatment. Leuzinger worked for sixteen years as a correctional officer at the Juvenile Hall of County of Lake's Probation Department. Since 2000, Leuzinger was a Senior Juvenile Correctional Officer. In July 1998, while supervising a game, Leuzinger was struck with a baseball and sustained a fracture of the pisiform bone in her left wrist. In July 2002, Leuzinger underwent surgery to repair her wrist. Leuzinger had a second operation on her left wrist on June 6, 2003.

On March 28, 2004, Leuzinger stopped working because she had been diagnosed with breast cancer. Leuzinger took medical leave for surgery and for follow-up radiation treatments. The medical

leave commenced on March 31, 2004, and continued through November 1, 2004.

In March 2004, Leuzinger was scheduled to rotate to the "graveyard shift." On April 12, 2004, Leuzinger met with Chief Probation Officer Steven Buchholz to express her concern that she had been scheduled to work with a new part-time employee on the graveyard shift. On the nighttime shift only two correctional officers are on duty. Leuzinger mentioned that she was still experiencing problems with her wrist and that it might be aggravated by working with a new employee if that new officer was unable to effectively back her up in the event she needed to restrain a ward. Leuzinger requested that she be paired with an experienced correctional officer when she was to come back and take the graveyard shift.

On May 8, 2004, Leuzinger received a letter from the County's workers compensation insurance carrier declaring that she could not return to her regular job duties because she could not perform the essential functions of her position due to the problems related to her wrist.

On May 20, 2004, Leuzinger met with Jennifer Hammond, an employee in the County's Risk Management Department. Leuzinger again raised her concern about working on the graveyard shift with an inexperienced officer and suggested that she could perform on the graveyard shift as long as she was paired with an experienced officer. Leuzinger states that despite her efforts, Hammond appeared unwilling to consider placing her back in her former position. Instead, Hammond suggested that Leuzinger apply for a lateral transfer, which Leuzinger did on May 25th. *See* Docket No. 33, Ex. 18.

Leuzinger later received a letter dated June 4, 2004, from Jeff Rein, Lake County Risk Manager, stating that there was "no manner in which [her] work restriction [could] be reasonably accommodated in order for [her] to return to work as a Senior Juvenile Correction Officer," and that until an accommodation or alternate position was located, Leuzinger could not work in Juvenile Hall. Docket No. 33, Ex. 19.

On June 16, 2004, Leuzinger applied for industrial disability retirement. In her application, Leuzinger stated that "I am to avoid lifting more than 7 pounds and limit the amount of time I have to restrain a juvenile. I have to be able to restrain a juvenile at any time." Docket No. 29, Ex. B23. On

1  December 21, 2004, Leuzinger was approved for disability retirement and retired from the Juvenile Hall
2  corrections position.

3  It is Leuzinger's position that "[i]t was not until shortly after she informed her employer of her
4  diagnosis of breast cancer and began a medical leave for surgery and radiation in mid-2004 that the
5  County decided that she was no longer able to perform the duties of her corrections officer job allegedly
6  because of restrictions related to her wrist injury." Docket No. 32, at 1. Despite her wrist injury,
7  Leuzinger had been performing the position of a Senior Juvenile Correctional Officer for nine months
8  without a problem prior to her medical leave.

9  Leuzinger filed a complaint of discrimination with the California Department of Fair
10 Employment and Housing around September 9, 2004. The Department issued a notice of right to sue
11 on September 6, 2005. The Equal Employment Opportunity Commission issued a right to sue letter on
12 October 20, 2005.

13 In her amended complaint before this Court, Leuzinger asserts causes of action for: (1) violation
14 of 42 U.S.C. § 1983; (2) discrimination based on a disability in violation of the Americans with
15 Disabilities Act; (3) disability-based discrimination in contravention of California Government Code
16 section 12940(a); (4) discrimination on the basis of a medical condition in violation of California
17 Government Code sections 12940(a) and 12926(h); (5) failure to engage in an interactive process
18 pursuant to California Government Code section 12940(n); (6) failure to accommodate a disability under
19 California Government Code section 12940(m); (7) unlawful discharge and discrimination under the
20 Family and Medical Leave Act; (8) unlawful discharge and discrimination under the California Family
21 Rights Act; and (9) wrongful termination in violation of public policy. *See* Docket No. 22 (Am.
22 Compl.).

23

**LEGAL STANDARDS**

25 Summary judgment is appropriate if no genuine issue of material fact exists and the moving
26 party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477

3

U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

## ANALYSIS

Lake County's summary judgment motion is based on the following arguments: (1) Leuzinger should be estopped from asserting a claim for disability discrimination; (2) Leuzinger is not a "qualified individual" under the Americans with Disabilities Act (ADA) or the California Fair Employment and Housing Act (FEHA); (3) the County engaged in the "interactive process" required and sought reasonable accommodation for Leuzinger; (4) the employment decisions made by the County were based on legitimate, non-discriminatory reasons; (5) Leuzinger was not eligible nor on leave pursuant to the Lake County Family Care and Medical Leave Policy; and (6) Leuziner was not terminated from her employment. Because several of the County's arguments are cursory, the motion is best analyzed in terms of the relevant statutes and whether the County has demonstrated that are no genuine issues of material fact with regard to Leuziner's asserted causes of action pursuant to those statutes. Both parties

focus mostly on the Leuzinger's claim under the ADA, so that is an appropriate starting point.

**1.    ADA and FEHA**

Under the ADA, an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citing 42 U.S.C. § 12112(b)(5)(A)) (emphasis omitted). To sustain a claim under the ADA, a plaintiff must show that (1) she is "disabled" within the meaning of the Act; (2) she is a "qualified individual" able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *See Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam); *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1229 (9th Cir. 2003).

   **a.    "Disabled"**

Lake County does not challenge that Leuzinger is "disabled" within the meaning of the ADA and FEHA for the purposes of the present motion. *See* Docket No. 24, at 3 n.2.

   **b.    "Qualified Individual"**

Lake County does maintain that Leuzinger is not a "qualified individual" under the ADA and FEHA. Lake County proffers two main arguments: (1) that Leuzinger should be judicially estopped from claiming that she is a qualified individual; and (2) Leuzinger is not a qualified individual within the meaning of the ADA or FEHA because she cannot perform the essential functions of the Supervisor Juvenile Correctional Officer with or without an accommodation.

      **i.    Judicial Estoppel**

Lake County maintains that the allegations of Leuzinger's complaint are irreconcilable with and contradictory to statements made in her applications for a lateral transfer and industrial disability benefits. In her complaint, Leuzinger takes the position that she is a "qualified individual" that could

1 perform the essential functions of her job with reasonable accommodation. In her June 16, 2004
2 application for industrial disability retirement, Leuzinger stated that "I am to avoid lifting more than 7
3 pounds and limit the amount of time I have to restrain a juvenile. I have to be able to restrain a juvenile
4 at any time." Docket No. 29, Ex. B23. Lake County argues that based on her representations that she
5 lacked the capacity to perform her job functions in her disability application, Leuzinger should be
6 judicially estopped from now claiming that she is a qualified individual who could perform the essential
7 functions of her position.

8 The County relies primarily upon *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795
9 (1999), in support of judicial estoppel. In *Cleveland*, the Supreme Court noted that

> a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

13 *Id.* at 806.

14 Leuzinger offers the following explanation:

> Having received no information about other jobs, by mid-June 2004, Plaintiff became very concerned that once her accrued sick leave and compensatory time off ran out, she would have no source of income and while she was battling cancer, no health insurance. At 52 years old, she had no plans or desire to retire but feeling despondent about having been forced out of her long-time career, she saw no alternative other than to apply for disability retirement benefits. She was aware that if the County did at some point, permit her to return to her job or provide a comparable job, she could withdraw the application.

19 Docket No. 32, at 8.

20 Leuzinger further explains that the filing of her application for disability retirement benefits was
21 prompted solely by the County's refusal to allow her to return to her job. In an addendum to her
22 disability application Leuzinger specifically stated that "I have had limited ability in regards to take
23 downs since the injury to my wrist in 1998 and although I feel that I am still able to do the job, I was
24 fired anyway." Docket No. 33, Ex. 20. At the time she applied for disability benefits, Leuzinger had
25 been informed by the County that it regarded her as disabled and as unable to perform the essential
26 functions of her position. Leuzinger was at the time using up accrued time to accommodate her medical

6

leave of absence.

This is a sufficient explanation in light of the Ninth Circuit's reasoning in *Johnson v. Oregon Department of Human Resources*, 141 F.3d 1361 (9th Cir. 1998). In that case, the Ninth Circuit held that a person's representation that she is disabled for purposes of disability benefits is not an automatic bar to an ADA claim that she is a qualified individual with a disability. *Id.* at. 1367. The court noted that due to different definitions of "disability," it is possible to qualify for disability benefits and to satisfy the ADA's definition of a qualified person with a disability and therefore that a person's representations that she is disabled for purposes of disability benefits is not necessarily inconsistent with her representation that she is a qualified individual under the ADA. *Id.* at 1366-67. And the *Johnson* court made very clear that in most cases, a straight-forward summary judgment analysis rather than theories of estoppel is appropriate. *Id.* at 1369. Judicial estoppel should be limited to situations where a party's position is tantamount to a knowing misrepresentation to or even fraud on the court. *Id.*

The statement that she had to "limit the amount of time I have to restrain a juvenile," is not the same as flat declaration that she could not restrain a juvenile ward. *Cf. id.* at 1368 (distinguishing unconditional assertions as to disability and the ability to work) And it was reasonable for Leuzinger to apply for disability benefits given that at the time it was the County's position that she was disabled and would not be allowed to return to her former employment. There is nothing in Leuzinger's statements suggesting that she is attempting to work a fraud upon the Court. Therefore it is more appropriate to engage in a more traditional summary judgment analysis rather than invoke an equitable doctrine to preclude Leuzinger from asserting her claim.

### ii.     "Qualified Individual" under the ADA and FEHA

Lake County's main contention in its summary judgment motion is that Leuzinger is not a "qualified individual" within the meaning of the ADA or FEHA because she cannot perform the essential functions of the Supervisor Juvenile Correctional Officer with or without an accommodation, due to her left wrist. In particular, the County maintains that the ability to physically restrain wards and to be capable of lifting up to fifty pounds are essential functions of a Senior Juvenile Correctional

7

1 Officer.

2 The ADA defines a "qualified individual" as an individual "with a disability who, with or 3 without reasonable accommodation, can perform the essential functions of the employment position that 4 such individual holds or desires." 42 U.S.C. § 12111(8). The plaintiff bears the burden of proving she 5 is "qualified." *See Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 6 1252 (2007); *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).

7 The term "essential functions" refers to the "fundamental job duties of the employment position 8 the individual with a disability holds or desires;" it does not "include the marginal functions of the 9 position." 29 C.F.R. § 1630.2(n)(1); *see also Dark*, 451 F.3d at 1087. If a disabled person cannot 10 perform a job's "essential functions" (even with a reasonable accommodation), then the ADA's 11 employment protections do not apply. *See Cripe v. City of San Jose*, 261 F.3d 877, 884 (9th Cir. 2001). 12 The ADA does not require an employer to exempt an employee from performing essential functions or 13 to reallocate essential functions to other employees. *See Dark*, 451 F.3d at 1089. To avoid summary 14 judgment, however, the plaintiff need only show that an accommodation seems reasonable on its face. 15 *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002); *Dark*, 451 F.3d at 1088.

16 For her part, the "Plaintiff does not contest the fact that restraint of wards was an essential 17 function of her job . . ." Docket No. 32, 13. Leuzinger counters that she was able to perform the 18 essential functions and the necessary duties of the correctional officer position, as proven by her 19 working in that capacity from July 8, 2003 (when she was released back to work following the second 20 wrist surgery) through March 31, 2004 (when she left for medical leave due to breast cancer), without 21 difficulties. Leuzinger asserts the fact that she did the job for nine months without problem belies any 22 contention that she is not able to do the job. Such an empirical fact would seem to seriously undermine 23 the County's contrary position.

24 As for the ability to lift up to fifty pounds as an "essential function" of being a Senior Juvenile 25 Correctional Officer, Lake County's job description for a "Senior Juvenile Correctional Officer" states 26 that the ability to "lift and move objects weighing up to 50 lbs. without assistance" is a "typical"

27
28

8

1 physical requirement for the position. Docket No. 29, Ex. 9. A "typical" physical requirement is not
2 quite the same as a "fundamental job dut[y] of the employment position the individual with a disability
3 holds or desires." 29 C.F.R. § 1630.2(n)(1). Moreover, as will be touched upon below, her doctor
4 suggested that she was limited to lifting no more than seven pounds with her left wrist. Assuming this
5 was the case, this does not show how much Leuzinger could or could not lift in total when using both
6 extremities. As suggested by her doctor, Leuzinger was capable of compensating her physical activities
7 with the use of her right hand.

8 The County also suggests that "physician-imposed limitations precluding her from performing
9 the essential functions of her position as SJCO." Docket No. 24, at 12. The are two relevant physician
10 reports on the issue of Leuzinger's work-related limitations, neither of which conclusively demonstrates
11 that she could not perform the essential functions of the position.

12 Dr. David Nelson reported that Leuzinger could return to work as a Senior Juvenile Correctional
13 Officer without restrictions effective July 8, 2003. On December 1, 2003, Dr. Nelson issued the
14 following report on Leuzinger's condition:

> In terms of preclusions and work restrictions, I have suggested that the patient can return to normal duties without restrictions, since any time we gave her restrictions, placed her into a different job which ended up being actually more demanding to her wrist and it was unacceptable to the patient. I think it is reasonable for her to avoid lifting more than approximately seven pounds with her left wrist. She should not do handwriting for more than fifteen minutes at a time without taking at least a five-minute break and she needs to limit the amount of times that she has to forcefully restrain a client. By that I am referring to the physical restraining of a juvenile, having to force them to the ground or stop them from doing something they are aggressively trying to do. However, I don't think that any of these should stop her from doing her normal job since she is able to compensate using her right hand, have a co-workers assist her, making two trips rather than carrying everything at once, etc.

Docket No. 29, Ex. 18.

Dr. Joseph Matan was asked to evaluate whether he agreed with Dr. Nelson's work preclusions. On March 1, 2004, Dr. Matan issued his report largely concurring with Dr. Nelson's assessment. In the section of his report addressing work restrictions, Dr. Matan stated:

> Dr. Nelson, who has seen her on multiple occasions and operated on her twice, has come up with very specific restrictions. In my opinion she should have those restrictions. I would state from an overall point of view she has disability precluding heavy or

9

repetitive use of her left upper extremity.

Docket No. 29, Ex. 19.

There are a number of difficulties with relying on these physician reports as "physician-imposed limitations." First, the limitations imposed are equivocal. Dr. Nelson suggests both that she can return to work without restrictions and that there are some limitations or restrictions on the use of her left wrist. In either case though, Dr. Nelson explicitly declares that Leuzinger could continue doing her normal work. What his report seems to be are suggestions to prevent Leuzinger from aggravating her left wrist; it is not a conclusion that she was unable to perform the functions of her job.

Second, the suggestion that "she needs to limit the amount of times that she has to forcefully restrain a client" is not an declaration that Leuzinger was incapable of performing the essential function of restraining wards; it an assertion that Leuzinger needed to limit how often she had to use force. And given that Leuzinger apparently did restrain wards as necessary for a period of nine months takes away some credence from the County's reliance upon this finding to support its conclusion that Leuzinger could not perform this essential function.

Therefore, there is at least a genuine factual dispute as to whether Leuzinger was a "qualified individual" for the purposes of the ADA and FEHA at the time of the adverse employment action. The facts viewed favorably to Leuzinger show that she was performing as a Senior Juvenile Correctional Officer for almost nine full months, apparently satisfactorily and capably. And although it is not specified in the summary judgment record, this also apparently included the ability to physically restrain wards. If so, she was performing the essential functions of the position without accommodation. If, on the other hand, Leuzinger was not physically restraining wards during that nine month period, this would suggest that this is not truly an essential function of the position.

Leuzinger did suggest that she needed accommodation to perform duties of the position in anticipation of being place on the graveyard shift with only one inexperienced co-worker. As an accommodation, Leuzinger suggested that she be placed on the graveyard shift with an experienced co-worker instead. Viewed favorably to Leuzinger, the facts suggest that in reacting to this request, the

10

County engaged in the following line of deliberation: Leuzinger requested an accommodation—that she be paired with an experienced correctional officer when assigned to the graveyard shift. The County determined that it could not accommodate this request. Because it could not accommodate this request, Leuzinger could not perform the essential functions of her position. Because she could no longer perform an essential function of her position, she could not continue as a correctional officer.

The problem with this is that merely because the County could not accommodate a particular request, it did not follow that Leuzinger could not perform the essential functions of her position. It is not clear that Leuzinger ever took the stance that if her request was not granted, she would refuse to continue in her job. It appears that the County jumped from the mere fact of the request being made to the conclusion that Leuzinger was disabled and this disability was one that could not be accommodated. There is then at least a fact issue as to whether Leuzinger was a "qualified individual" within the meaning of the ADA.

### iii. Adverse Employment Action

Lake County contends that Leuzinger was not terminated from her employment. It is the County's position that Leuzinger's employment ended upon her retirement as a result of her own request, not as the result of any termination. An "adverse employment action," however, is not limited merely to terminations. The ADA prohibits discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

Leuzinger has therefore stated a prima facie claim under the ADA. The County has not demonstrated a lack of a genuine issue of fact with respect to whether Leuzinger is or was "disabled;" that she was a "qualified individual;" or that she suffered an "adverse employment action." The County's motion for summary judgment on Leuzinger's claim under the ADA should be denied.

Turning next to the California Fair Employment and Housing Act, the requirements for making a claim under that statute are fairly similar to the ADA. A plaintiff can establish a prima facie claim of discrimination by proving that: (1) she suffered from a disability; (2) with or without reasonable

11

accommodation, she could perform the essential functions of the employment position she held or desired; and (3) that she was subjected to an adverse employment action because of her disability. *See Jenkins v. County of Riverside*, 138 Cal. App. 4th 593, 603 (2006); *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999). From the above analysis, it is clear that the first and third elements are not at issue. With respect to the second, the County largely assumes that this element parallels federal law under the ADA, and that because it is the County's position that Leuzinger is not a "qualified individual" under the ADA, she also has no claim under FEHA. While California courts look to the ADA when construing those sections of FEHA that are similar to federal law, a number of California courts have noted that FEHA provision requiring reasonable accommodation is markedly different from the ADA's "qualified individual" analysis. *See, e.g., Bagatti v. Department of Rehabilitation*, 97 Cal. App. 4th 344, 359-61 (2002). It is an open question whether FEHA requires that an employee be "a qualified individual with a disability" as does the ADA. The Supreme Court of California is reviewing this question. *See Green v. California*, 123 P.3d 154 (Cal. 2005). Thus, even if the County's "qualified individual" argument had not already been rejected in the ADA analysis, it still would not necessarily defeat Leuzinger's claim under FEHA. Accordingly, the County has not demonstrated that summary judgment is warranted on the FEHA claim.

### 2. FMLA and CFRA

Turning to the other statutes briefly touched upon by the parties, Lake County argues that Leuzinger was not taking leave under the provisions of the Family and Medical Leave Act (FMLA) or the California Family Rights Act (CFRA) during her medical leave of absence from March 31, 2004 through November 1, 2004. Lake County seems to be advancing three arguments in support of this contention: (1) that Leuzinger did not request FMLA leave and therefore was not entitled to FMLA protections; (2) that Leuzinger was not entitled to FMLA protections because she did not exhaust all of her other available types of accrued leave provided by the County; and (3) Leuzinger overextended any FMLA leave she may have had. None of these arguments are fatal to her FMLA claim.

First, an employee need not expressly assert rights under the FMLA, or even mention the FMLA, to be entitled to the protections of that statute. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003); *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002). If an employee requests medical leave, it is the employer's responsibility to determine whether FMLA leave is appropriate and to inform the employee of her entitlements under the statute. *See Xin Liu*, 347 F.3d at 1134; *Bailey*, 275 F.3d at 1185. In this case, Leuzinger informed the County that she was taking medical leave for breast cancer treatment and additionally provided certification from her physician to that effect. This provided sufficient notice that the FMLA might apply; whether Leuzinger specifically invoked the FMLA is not relevant to whether she is protected by the statute.

The County's second argument is that it requires that an employee use up all sick time, "comp time," and all except forty hours of vacation time first, before using FMLA medical leave. Since Leuzinger had not exhausted these other forms of leave, Leuzinger was not on FMLA leave according to Lake County. This precise argument was addressed and persuasively rejected by the court in *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1204-06 (11th Cir. 2001). In that case, the court explained that it is a misinterpretation of the FMLA to maintain that an employee who has not exhausted all of his or her other forms of leave is not entitled to the protections of the FMLA. *Id*. at 1206. The court examined 29 U.S.C. § 2612(d)(1) and found that "this provision obviously means that an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay." *Id*. at 1205. In other words, while an employer may require an employee to use various forms of accrued leave while on FMLA leave, this does not change the fact that it is FMLA leave and that the employee is entitled to the protections of the FMLA.

The County also argues that Leuzinger's "medical leave was in excess of the 12 weeks afforded by the FMLA and CFRA." Docket No. 24, at 24. This argument fails because Leuzinger began her leave on March 31, 2004. She was removed from her job five weeks later on May 8, 2004. Even if Leuzinger ended up using more than the amount of leave she may be entitled to under the FMLA, the

adverse employment action took place within the time allowed under the Act.

Thus, the County has not demonstrated that summary judgment is appropriate on Leuzinger's FMLA claim. Under the FMLA, "any eligible employee who takes leave . . . shall be entitled, on return from such leave" "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). The County had not shown that the FMLA did not apply here or that the above protections of the FMLA were afforded to Leuzinger.

The County does not address the California Family Rights Act apart from the FMLA. Accordingly, it has not demonstrated that summary judgment is appropriate on either Leuzinger's FMLA or CFRA claims.

## CONCLUSION

Accordingly, defendant County of Lake's motion for summary judgment [Docket No. 24] is DENIED. The defendant's objections to the three declarations submitted by the plaintiff [Docket Nos. 36-38] are SUSTAINED.

IT IS SO ORDERED.

April 30, 2007

_____
Saundra Brown Armstrong
United States District Judge