**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SHARON L. LEUZINGER, | No. C 06-0398 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 118, 121] |
| COUNTY OF LAKE, | |
| Defendant. | |

Before the Court are defendant County of Lake's renewed motion for judgment as a matter of law [Docket No. 118] and alternative motion for a new trial [Docket No. 121]. After reading and considering the arguments presented by the parties, the Court finds these matters appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, both motions are DENIED.

## BACKGROUND

**1.     The Trial**

A jury trial was held in this case, beginning September 12, 2007. The jury returned its verdict on September 24, 2007. The jury found in favor of plaintiff Sharon Leuzinger on three claims. First, the jury found that defendant County of Lake, Leuzinger's former employer, discriminated against Leuzinger by taking an adverse employment action against her on the basis of her physical disability (an injury to her left wrist). *See* Docket No. 103 (Jury Verdict Responses 1-6). Part of this first finding included the jury's conclusion that Leuzinger was able to perform the essential job duties of her position, either with or without reasonable accommodation for her physical disability. *See id.* (Response 3). Second, the jury found that the County of Lake failed to engage in a timely, good faith interactive process with Leuzinger for the purpose of reasonably accommodating her actual or perceived physical disability. *See id.* (Responses 7, 8). Third, the jury found that the County of Lake failed to provide reasonable accommodation for Leuzinger's physical disability. *See id.* (Responses 9, 10). Each of these

constituted a finding that County of Lake violated California Government Code section 12940. The jury awarded Leuzinger a total of $1,679,001.00 in damages. *See id.* at 5. This consisted of $69,000.00 for past economic loss, $360,000.00 for future economic loss, $1,250,000.00 for past noneconomic loss, and $1.00 for future noneconomic loss. *See id.* Based on the jury's verdict, the Court entered judgment in favor of Leuzinger on October 31, 2007. *See* Docket No. 117.

At the conclusion of the presentation of evidence, defendant County of Lake moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). It now renews its motion under Rule 50(b). The defendant requests that the Court "grant its motion for judgment as a matter of law, direct entry of JMOL in favor of the County on those claims and conditionally grant County of Lake's motion for a new trial pursuant to Federal Rules of Civil Procedure, Rule 50(c). Alternatively, the County, on the basis of Federal Rules of Civil Procedure Rule 59(a) and the concurrent motion filed herein, moves for a new trial on those claims." Docket No. 118.

## 2. Factual History

Plaintiff Leuzinger alleged that her former employer, County of Lake, violated California anti-discrimination statutes by refusing to allow her to return to her position after she took medical leave for breast cancer treatment. Leuzinger worked for sixteen years as a correctional officer at the Juvenile Hall of County of Lake's Probation Department. Since 2000, Leuzinger was a Senior Juvenile Correctional Officer. In July 1998, while supervising a game, Leuzinger was struck with a baseball from an errant line-drive and sustained a fracture of the pisiform bone in her left wrist. In July 2002, Leuzinger underwent surgery to repair her wrist. Leuzinger had a second operation on her left wrist on June 6, 2003.

On March 28, 2004, Leuzinger stopped working because she had been diagnosed with breast cancer. Leuzinger took medical leave for surgery and for follow-up radiation treatments. The medical leave commenced on March 31, 2004, and continued through November 1, 2004.

In March 2004, Leuzinger was scheduled to rotate to the "graveyard shift." On April 12, 2004,

Leuzinger met with Chief Probation Officer Steven Buchholz to express her concern that she had been scheduled to work with a new part-time employee on the graveyard shift. On the nighttime shift only two correctional officers are on duty. Leuzinger mentioned that she was still experiencing problems with her wrist and that it might be aggravated by working with a new employee if that new officer was unable to effectively back her up in the event she needed to restrain a ward. Leuzinger requested that she be paired with an experienced correctional officer when she was to come back and take the graveyard shift. It is important to note, however, that Leuzinger never stated that she would not work the graveyard shift.

On May 8, 2004, Leuzinger received a letter from Northern Claims, defendant's worker's compensation insurance carrier, declaring that she could not return to her regular job duties because she could not perform the essential functions of her position due to the problems related to her wrist.

On May 20, 2004, Leuzinger met with Jennifer Hammond, an employee in the County's Risk Management Department. Leuzinger again raised her concern about working on the graveyard shift with an inexperienced officer and suggested that she could perform on the graveyard shift as long as she was paired with an experienced officer. Leuzinger stated that despite her efforts, Hammond appeared unwilling to consider placing her back in her former position. Instead, Hammond suggested that Leuzinger apply for a lateral transfer, which Leuzinger did on May 25th. *See* Docket No. 33, Ex. 18.

Leuzinger later received a letter dated June 4, 2004, from Jeff Rein, Lake County Risk Manager, stating that there was "no manner in which [her] work restriction [could] be reasonably accommodated in order for [her] to return to work as a Senior Juvenile Correction Officer," and that until an accommodation or alternate position was located, Leuzinger could not work in Juvenile Hall. *Id.*, Ex. 19. On December 21, 2004, Leuzinger was approved for disability retirement and retired from the Juvenile Hall corrections position.

It is Leuzinger's position that "[i]t was not until shortly after she informed her employer of her diagnosis of breast cancer and began a medical leave for surgery and radiation in mid-2004 that the County decided that she was no longer able to perform the duties of her corrections officer job allegedly

3

because of restrictions related to her wrist injury." Docket No. 32, at 1. Despite her wrist injury, Leuzinger had been performing the position of a Senior Juvenile Correctional Officer for nine months without a problem prior to her medical leave.

ANALYSIS

**A.     County of Lake's Renewed Motion for Judgment as a Matter of Law**

**1.     Legal Standards**

Federal Rule of Civil Procedure 50(a) governs judgments as a matter of law. This rule provides that "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law . . . ." FED. R. CIV. P. 50(a)(1). A party may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment. *See* FED. R. CIV. P. 50(b). A party may alternatively request a new trial under Rule 59. *See id.* Rule 50(a) provides that a motion for judgment as a matter of law made before the case is submitted to the jury "must specify . . . the law and the facts that entitle the movant to the judgment." FED. R. CIV. P. 50(a)(2). "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

The standard for granting a renewed motion for judgment as a matter of law mirrors the standard for granting a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). The court must view the evidence in the light most favorable to the nonmovant and draw all inferences in her favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). Moreover, the court may not assess the credibility of witnesses, and must disregard all evidence favorable to the moving party that the jury was not required to believe. *See Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003); *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal quotation omitted). "The test applied is whether the evidence permits only one reasonable

4

conclusion, and that conclusion is contrary to the jury's verdict." *Josephs*, 443 F.3d at 1062 (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 510 (9th Cir. 2004) (explaining that a "district court may set aside a jury verdict and grant judgment as a matter of law only if, under the governing law, there can be but one reasonable conclusion as to the verdict") (internal quotations omitted).

**2.     Sufficiency of Evidence for the Jury's Three Findings**

　　　**a.     Disability Discrimination**

County of Lake asserts that "[a]s a matter of law, the trial evidence, viewed in a light most favorable to Leuzinger and reasonable inferences therefrom, is wholly insufficient to support a finding that Leuzinger was able to perform the essential functions of the S/JCO position, with[ ] or without accommodation." Docket No. 118, at 12. County of Lake contends that Leuzinger failed to establish a legally sufficient evidentiary basis upon which a reasonable jury could find that Leuzinger was able to perform the essential functions of a Senior Juvenile Correctional Officer. In particular, the defendant argues that "[t]he undisputed evidence at trial, including Leuzinger's own admissions, established that an essential function of the juvenile correctional officer position has always been the ability to physically restrain a violent or aggressive juvenile, **without backup, without hesitation, at any time, under any circumstances, in any part of the Juvenile Hall**." Docket No. 159, at 2 (emphasis in original). According to the defendant, the evidence showed that Leuzinger could perform this "essential restraint function" only on an occasional basis. Therefore, it is County of Lake's position that Leuzinger was not a "qualified individual" under California's Fair Employment and Housing Act (FEHA).

Section 12940(a) of FEHA prohibits discrimination based on an employee's physical disability. *See Green v. State*, 42 Cal. 4th 254, 262 (2007). Under FEHA, it is unlawful "[f]or an employer, because of the . . . physical disability . . . of any person, . . . to bar or to discharge the person from employment or . . . to discriminate against the person in compensation or in the terms, conditions, or privileges of employment." CAL. GOV. CODE § 12940.

5

The California Supreme Court has recently clarified that FEHA, like the Americans with Disabilities Act, requires an employee to prove that he or she is a qualified individual under the statute, meaning that "the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." *See Green v. State*, 42 Cal. 4th 254, 257-58, 262 (2007). Put differently, "the FEHA and the ADA both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Id*. at 264.

The evidence viewed favorably to Leuzinger shows that a reasonable jury could conclude that she was able to perform the essential functions and the necessary duties of the correctional officer position. Perhaps the single weightiest piece of evidence that the jury could have relied upon is that Leuzinger in fact performed as a Senior Juvenile Correctional Officer from July 8, 2003 (when she was released back to work following the second wrist surgery) through March 31, 2004 (when she left for medical leave due to breast cancer), without difficulties. The defendant's renewed motion for judgment as a matter of law gives very little attention to this significant evidence that a jury might reasonably find seriously undermines its assertion that Leuzinger could not perform the duties of the position after her second surgery in June 2003.

Leuzinger performed as a Senior Juvenile Correctional Officer for nine months after the time that the defendant contends that Leuzinger was unable to perform the essential duties of her position. The jury heard testimony from Leuzinger that she performed all the duties of her job. *See* Docket No. 157, Ex. E (Leuzinger Test. 11:22-12:3; 20:11-6; 32:13-17; 64:19-65:1; 74:7-13; 100:6-23). The plaintiff's co-worker, Christopher McVey, testified that she was a reliable partner. *See* Docket No. 157, Ex. F. (McVey Test. 8:13-18; 31:4-7). Leuzinger's supervisors rated her performance as satisfactory during this time period, including her performance during take-downs. *See* Docket No. 155, Ex. 11 (Buchholz Test. at 68: 23 - 69:3).

During the trial, McVey was asked: "And after her injury, and when she had this pain, did you ever have any concern or worries about her being able to back you up?" Docket No. 155, Ex. 7 (McVey

Test. 8:13-15).  He responded, "I never did . . . Not with Sharon."  *Id*. at 8:16-18.  This was later followed up by this question: "Did you ever have any occasions when you did not believe Ms. Leuzinger was adequately performing the takedowns after she injured her wrist?"  *Id*. at 9:21-23.  McVey declared: "I never, never thought that.  I thought in all the years I have been there I could rely on Ms. Leuzinger to back me up better than any of my other coworkers."  *Id*. at 9:24 - 10:1.  McVey also testified that he never noticed Leuzinger hesitate before getting involved with takedowns.  *Id*. at 16:15-18.

The jury also heard the testimony of Leuzinger's supervisor, Steven Buchholz.  Buchholz testified that Leuzinger's job performance evaluation for the period between June 27, 2003 and June 27, 2004, indicated that her overall performance was satisfactory.  Docket No. 155, Ex. 11 (Buchholz Test. at 13:10-11; 14:7-8).  Buchholz was asked specifically about Leuzinger's ability to restrain wards: "At the time you made decisions regarding Sharon Leuzinger's working as a juvenile correctional officer, you understood that she had been involved in restraints of juveniles after December 1, '03, and that her work was satisfactory?"  *Id*. at 68:25 - 69:2.  Buchholz admitted, "At the time, yes."  *Id*. at 69:3.

The County of Lake also maintains that its position that Leuzinger was unable to perform the "essential restraining function" is demonstrated by her "doctor's restrictions."  Docket No. 118, at 15. There are two relevant physician reports on the issue of Leuzinger's work-related limitations, neither of which conclusively demonstrates that she could not perform the essential functions of the position. First, Dr. David Nelson reported that Leuzinger could return to work as a Senior Juvenile Correctional Officer without restrictions effective July 8, 2003.  On December 1, 2003, Dr. Nelson issued the following report on Leuzinger's condition:

> In terms of preclusions and work restrictions, I have suggested that the patient can return to normal duties without restrictions, since any time we gave her restrictions, placed her into a different job which ended up being actually more demanding to her wrist and it was unacceptable to the patient.  I think it is reasonable for her to avoid lifting more than approximately seven pounds with her left wrist.  She should not do handwriting for more than fifteen minutes at a time without taking at least a five-minute break and she needs to limit the amount of times that she has to forcefully restrain a client.  By that I am referring to the physical restraining of a juvenile, having to force them to the ground or stop them from doing something they are aggressively trying to do.  However, I don't think that any of these should stop her from doing her normal job since she is able to compensate using her right hand, have a co-workers assist her, making two trips rather than carrying everything at once, etc.

Docket No. 29, Ex. 18.

Second, Dr. Joseph Matan was asked to evaluate whether he agreed with Dr. Nelson's work preclusions. On March 1, 2004, Dr. Matan issued his report largely concurring with Dr. Nelson's assessment. In the section of his report addressing work restrictions, Dr. Matan stated:

> Dr. Nelson, who has seen her on multiple occasions and operated on her twice, has come up with very specific restrictions. In my opinion she should have those restrictions. I would state from an overall point of view she has a disability precluding heavy or repetitive use of her left upper extremity.

Docket No. 29, Ex. 19.

In the Court's order denying the defendant's summary judgment motion, the Court explained that:

> There are a number of difficulties with relying on these physician reports as "physician-imposed limitations." First, the limitations imposed are equivocal. Dr. Nelson suggests both that she can return to work without restrictions and that there are some limitations or restrictions on the use of her left wrist. In either case though, Dr. Nelson explicitly declares that Leuzinger could continue doing her normal work. What his report seems to be are suggestions to prevent Leuzinger from aggravating her left wrist; it is not a conclusion that she was unable to perform the functions of her job.
> Second, the suggestion that "she needs to limit the amount of times that she has to forcefully restrain a client" is not an declaration that Leuzinger was incapable of performing the essential function of restraining wards; it an assertion that Leuzinger needed to limit how often she had to use force. And given that Leuzinger apparently did restrain wards as necessary for a period of nine months takes away some credence from the County's reliance upon this finding to support its conclusion that Leuzinger could not perform this essential function.

Docket No. 43, at 10.

The difficulties with the defendant's interpretation of these reports noted by the Court were in fact borne out before the jury by the testimony of both Drs. Nelson and Matan. Dr. Nelson confirmed that he released Leuzinger to return to work without restrictions. *See* Docket No. 155, Ex. 8 (Nelson Test. 38:8-10). He added that by "no work restrictions," he meant "Ms. Leuzinger [could] do takedowns of juveniles." *Id*. at 52:5-7. As far as his "restriction" that Leuzinger not lift more than seven pounds, Dr. Nelson clarified that "I try to indicate in the sentence in two ways that this isn't an absolute. I said: I think it's reasonable for her to avoid -- doesn't mean you can't do it, but she can't work on an assembly line and put 7 pound bags of sugar on a conveyor belt." *Id*. at 58:23 - 59:2. Dr. Nelson also

8

clarified what he meant by stating that Leuzinger needed to limit the amount of times that she had to forcibly restrain a client. *See id.* at 61:21 - 63:17. He offered an analogy that "if she were to wrestle full time, she would have more pain than she could stand and she wouldn't be able to do it. She can't be a professional wrestler. But I am not saying that she could never do it [forcibly restrain a client]." *Id.* at 62:1-4. Dr. Nelson added that "she should be able to do it [restrain a juvenile] every once in a while." *Id.* at 62:21-22. And Dr. Nelson stated clearly that in his opinion, Leuzinger "was able to work." *Id.* at 72:5-6. He also affirmed that he understood that restraining violent juveniles was one of Leuzinger's job duties. *Id.* at 74:4-11.

In his testimony, Dr. Matan was asked, "Did you intend, by anything you wrote in your March 1, '04 report, to communicate that Ms. Leuzinger w[as] unable to do the work of a juvenile correctional officer." Docket No. 155, Ex. 9 (Matan Test. 22:20-22). He responded, "No." *Id.* at 22:23. Dr. Matan was then asked, "Did you intend to communicate that she could not participate in physical forcible restraints of juveniles?" *Id.* at 22:24-25. Dr. Matan responded: "No. There are several places in this report, in fact, which I say she can do her regular job." *Id.* at 23:1-2. Later, Dr. Matan offered his opinion that, as of March 1, 2004, near the very time that the defendant took its adverse employment action, Leuzinger could forcibly restrain juveniles with her left hand. *See id.* at 27:22-25.

Both Drs. Nelson and Matan further testified that despite her injury, Leuzinger's grip strength was significantly higher than that of an average woman, and was comparable to that of an average man. *See* Docket No. 157, Ex. G. (Nelson Test. 51:3-11; 65:4-5); Ex. H. (Matan Test. 10:10-17; 13:9-14). The average woman's grip strength is 60 to 80 pounds. Leuzinger's grip strength with her left hand was 100 to 105 pounds and was 125 pounds with her right hand. *See id.* Both doctors described this as excellent grip strength, with Dr. Matan noting that many men do not have grip strength of 90 pounds. *See* Matan. Test. 13:9-14.

The defendant also makes a few other ancillary arguments that there was insufficient evidence for a reasonable jury to conclude that Leuzinger was able to perform the essential duties of the position. For instance, the defendant repeatedly tries to cast Leuzinger's testimony as an admission that she could

not perform the essential duties of her job. The defendant cites the following exchange between it and Leuzinger:

> Q. And the ability to do -- the ability to forcefully restrain a violent juvenile is an essential function of your position?
> A. Yes.
> Q. And the ability to lift over 20 pounds is an essential function of your position?
> A. I would think so, yes.
> Q. We just looked at that. Do you have any doubt about that?
> A. No.

Docket No. 119, Ex. C (Leuzinger Test. at 76:2 - 76:10).

> Q. But you knew that you couldn't work as a Senior Juvenile Correction Officer with those restrictions, right?
> A. Yes.

*Id*. at 77:3-5.

But a full review of defense counsel's questioning and Leuzinger's testimony clearly, explicitly, and repeatedly shows that the referenced "restrictions" related to the *temporary* restrictions Dr. Nelson imposed immediately after Leuzinger's second surgery. Shortly after this period, Dr. Nelson released Leuzinger to return to work with no restrictions. These restrictions were not in place when Leuzinger returned to work in July 2003. Moreover, these restrictions were not in place when County of Lake made its adverse employment decision in 2004. A reasonable jury certainly was not required to conclude from this testimony that Leuzinger admitted that she was not able to perform the essential duties of her job or that she was not a qualified individual.

Next, the defendant repeatedly emphasizes that an essential duty was the ability to restrain a juvenile "at any time." The defendant suggests that this may only be understood as equivalent to "continuously." And since, by all accounts, Leuzinger could not physically restrain juveniles on a continuous basis, meaning all day long, she could not restrain a juvenile "at any time" and by extension could not perform the essential restraining function.

But the evidence before the jury was not that physically restraining juveniles was a continuous and constant function of the position. The jury heard testimony from two correctional officers, Leuzinger and McVey, that the use of physical restraint was required only about once a month or less.

Docket No. 155, Ex. 6 (Leuzinger Test. 14:16-18); Docket No. 155, Ex. 7 (McVey Test. 13:3-7) (6 to 10 times a year). The evidence does not support the defendant's insistence that "at any time" means the same as "all the time" or that this was the only conclusion that a reasonable jury could draw.

Finally, the defendant claims that Leuzinger failed to properly restrain a violent juvenile on at least two occasions in January 2004 due to the condition of her left wrist. It may be noted that this was not the defendant's position prior to litigation when it rated Leuzinger's performance as satisfactory during this very time period. In fact, there were written reports generated after every "takedown." As stated above, Buchholz admitted that these reports, including those involving takedowns after December 2003, showed that Leuzinger's performance was satisfactory. *See* Docket No. 157, Ex. J (Buchholz Test. 68:11 - 69:3). And about the January 13, 2004 incident where Leuzinger lost her grip on a combative ward, the jury heard that Leuzinger's partner similarly lost control of the ward and that a third officer was required to finally restrain him. *See* Docket No. 157, Ex. E (Leuzinger Test. 102:13-22). The jury could quite reasonably conclude that if Leuzinger's partner was not able to restrain the ward, that Leuzinger's inability to was not attributable to her injury. In addition, both Drs. Nelson and Matan testified that Leuzinger's grip strength, even with her left hand, was significantly above that of an average woman.

Accordingly, there is adequate evidence to support the jury's conclusion that Leuzinger could perform the essential duties of being a Senior Juvenile Correctional Officer.

      **b.**      **Failure to Engage in the Interactive Process**

The defendant next contends that the Court should set aside the jury's verdict that it "fail[ed] to engage in a timely, good faith interactive process with Sharon Leuzinger for the purpose of reasonably accommodating her actual or perceived physical disability." Docket No. 103, at 2.

California Government Code section 12940(n) provides that "It shall be an unlawful employment practice, unless based on a bona fide occupational qualification" "For an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective

reasonable accommodations, if any, in a response to a request for reasonable accommodation by an employee or applicant with a known physical . . . disability . . . ." This is an independent cause of action under FEHA for which an employer may be held liable. *See Wysinger v. Automobile Club of S. Cal.*, 157 Cal. App. 4th 413, 424-25 (2007). This interactive process is a duty "to explore the alternatives to accommodate the disability." *Id*. at 424.

There was sufficient evidence for a reasonable jury to find that the County of Lake failed to engage in a good faith interactive process in violation of FEHA. The defendant argues first that the Court should grant it judgment as a matter of law on this claim because Leuzinger was not a qualified individual as she could not perform the essential duties of her position. Thus, "[a]bsent Leuzinger's showing on this essential element of her cause of action, Leuzinger cannot prevail in an FEHA claim based on failure to engage in the interactive process." Docket No. 118, at 22. For the reasons discussed above, this first argument must be rejected. There was sufficient evidence before the jury that Leuzinger was able to perform the essential duties of her position, including the "essential restraining function."

Positive evidence supporting the jury's conclusion includes testimony from Leuzinger's supervisor, Steven Buchholz:

> Q.     And she, Sharon, left a message saying that she wanted to meet with you?
> A.     Correct.
> Q.     And even though she didn't say so, you thought that she was calling about wanting to return to work?
> A.     I believe that is what I thought, yes.

Docket No. 157, Ex. J. (Buchholz Test. at 58:21 - 59:1).

> Q.     Did you understand at this point that Sharon was making an effort to undergo what you know or you knew at the time as the interactive process?
> A.     Yes. She had already asked for the accommodation of being placed on days versus graves.

*Id*. at 59:21-24.

> Q.     And you told Sharon on May 12th that you did not think it was appropriate for you to meet with her, correct?
> A.     At that point, yes.
> Q.     So you did not meet with her?
> A.     Correct.

*Id*. at 60:6-10.

Q. Sherrill Gillaspie called you on May 13th and told you that Sharon had called Juvenile Hall wanting to return to work on June 1; isn't that --
A. Correct.
Q. And you told Ms. Gillaspie that Sharon was not to be placed on the schedule.
A. Correct.
Q. And you told her that Sharon may not return to work until further notice from you.
A. Correct.
Q. Then on May 14th you received another call from Ms. Gillaspie; is that true?
A. Correct.
Q. And she told you than Sharon was upset that she was not on the schedule for June?
A. Yes.

*Id.* at 61:10-25.

Q. But Ms. Kathy Arthur made it clear to you that Sharon wanted to return to her job.
A. That was made clear to me by Kathy Arthur and I heard that from Risk Management that Sharon wanted to return to work. And that the contact that I had with Sharon in April, it was clear that she wanted to return to work.

*Id.* at 64:4-9.

Q. Is it correct that Jeff Rein informed you that you would be contacted by Anita Grant, the County counsel, as it appears that the most recent restriction seem to suggest that accommodations could be made for Ms. Leuzinger.
A. I think that's accurate. I think the way the doctor wrote the restrictions, it did suggest that accommodations could be made.

*Id.* at 67: 16-22.

The jury also heard testimony from Leuzinger that she wrote the County Board of Supervisors complaining of discrimination on the basis of physical disability, but received no response, nor did the County conduct any investigation. *See* Docket No. 157, Ex. E (Leuzinger Test. 43:17-19; 44:8-17; 44:23-25); Ex. I (Young Test. 21:13-21). Thus, there was sufficient evidence for a reasonable jury to conclude that the defendant failed to engage in a good faith interactive process as required by FEHA.

### c. Failure to Provide a Reasonable Accommodation

Lastly, the defendant urges the Court to set aside the jury's verdict that it "fail[ed] to provide reasonable accommodation for Sharon Leuzinger's physical disability" and grant it judgment as a matter of law. Docket No. 103, at 3.

13

It is unlawful, and separately actionable under FEHA, for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless the accommodation would cause "undue hardship" to the employer. CAL. GOV. CODE § 12940(m); *see also Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (2006).

The County of Lake again relies upon its position that Leuzinger was not a "qualified individual" "able to perform the essential functions of the SJCO position, with or without reasonable accommodation." Docket No. 118, at 24. This argument must again be rejected.

In addition, the defendant argues that "A review of the evidence presented to the jury at trial demonstrates, without dispute, that there existed no reasonable accommodation that would permit Leuzinger to perform the essential functions of the SJCO position." *Id.* at 25. An undisputed lack of such evidence, however, is not confirmed by a review of the record. For instance, the jury heard testimony from Buchholz that he was informed that he would be contacted by County counsel because it appeared that accommodation could be made for Leuzinger. *See* Docket No. 157, Ex. J (Buchholz Test. 67:16-22). The jury heard testimony that at least one correctional officer was not required to work the "graveyard shift." *See* Docket No. 157, Ex. F (McVey Test. 15:17 - 16:14). Indeed, the jury heard testimony from Leuzinger that her suggestion that she be assigned to the day shift when there are four officers on duty or that she be assigned to the "graveyard shift" with an experienced correctional officer was rejected by the defendant. *See* Docket No. 157, Ex. E (Leuzinger Test. 31:7 -32:5; 34:11-20). Moreover, the jury heard testimony from Dr. Matan that a wrist brace would have decreased the amount of pain in her wrist while performing "takedowns" of juveniles. *See* Docket No. 157, Ex. H (Matan Test. 32:4-17). With respect to the possibility of a wrist brace, the defendant objects that this was never brought to its attention. However, the court in *Wysinger v. Automobile Club of S. Cal.*, 157 Cal. App. 4th 413, 424-25 (2007) recently articulated why this form of argument is not persuasive:

> An employer may claim there were no available reasonable accommodations. But if it did not engage in a good faith interactive process, "it cannot be known whether an alternative job would have been found." The interactive process determines which accommodations are required. Indeed, the interactive process could reveal solutions that neither party envisioned.

*Id.* (citations omitted).

Having found that the defendant failed to engage in the interactive process, the jury did not have to rely upon only those reasonable accommodations that Leuzinger specifically brought to the defendant's attention. Therefore, as with the prior to claims, sufficient evidence was presented to the jury to support its findings. County of Lake's renewed motion for judgment as a matter of law must be denied.

## B.     County of Lake's Motion for a New Trial

In the alternative to judgment as a matter of law in its favor, the defendant seeks a new trial under Federal Rule of Civil Procedure 59 on the same three issues for which its seeks judgment as a matter of law. *See* Docket No. 121. The defendant's motion for a new trial is nearly identical to its Rule 50(b) motion. And because its arguments and reasoning for a new trial parallel those for its motion for judgment as a matter of law, the Court need not fully repeat its prior analysis.

### 1.     Legal Standards for a Motion for a New Trial

Federal Rule of Civil Procedure 59(a) provides that a court may "grant a new trial on all or some of the issues" "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A new trial is appropriate if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004); *City Solutions, Inc. v. Clear Channel Commc'ns.*, 365 F.3d 835, 843 (9th Cir. 2004). A new trial is generally not granted unless the court "is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987). Moreover, "a district court may not grant or deny a new trial merely because it would have arrived at a different verdict." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

**2.** **Whether the Verdict was Against the Weight of the Evidence or a Miscarriage of Justice**

This Court heard all of the evidence and testimony that the jury did. The plaintiff presented a number of witnesses, including herself, two co-workers, her treating doctor, the agreed medical examiner, and three county employees. The Court does not find suspect any of the evidence or testimony offered by the plaintiff or the plaintiff's witnesses such that leaving the jury's verdict in place would be a miscarriage of justice. Although the defendant repeatedly asserts that Leuzinger could not perform the essential functions of her job after her second surgery, she in fact did so for nine months, and her performance during that time was rated as satisfactory by the defendant. The jury's finding on this matter was not against the weight of the evidence.

The Court also does not find the County of Lake's interpretation of the "doctor imposed restrictions" persuasive, and certainty does not have a firm and definite conviction that the jury failed to properly account for these purported restrictions. It appears from the record that the defendant, acting through Steven Buchholz, misinterpreted the letters from the doctors as imposing mandatory restrictions that were simply suggestions. Both doctors testified that this was the case, and the defendant made no effort to clarify their recommendations. The jury could properly find that Leuzinger was able to perform the essential duties of a Senior Juvenile Correctional Officer.

Finally, the Court finds that the jury's verdict that the defendant failed to engage in a timely, good faith interactive process with Leuzinger is not against the weight of the evidence or a miscarriage of justice. Leuzinger's supervisor Buchholz quite clearly refused to discuss the situation with the plaintiff despite her numerous attempts to initiate discussion, and ordered that those under him do likewise. Similarly, the Court does not find that the jury's verdict that the defendant failed to provide reasonable accommodation to be against the weight of the evidence or a miscarriage of justice for the reasons mentioned in the analysis of the motion for judgment as a matter of law. A new trial is not warranted.

**CONCLUSION**

2    Accordingly, defendant County of Lake's renewed motion for judgment as a matter of law

3  [Docket No. 118] and alternative motion for a new trial [Docket No. 121] are DENIED.

4    IT IS SO ORDERED.

5

6    February 1, 2008                         *Saundra B Armstrong*
                                              Saundra Brown Armstrong
7                                             United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                   17