STEPHEN M. MURPHY (SBN 103768)
JEREMY A. GRAHAM (SBN 234166)
LAW OFFICES OF STEPHEN M. MURPHY
180 Montgomery Street, Suite 940
San Francisco, CA 94104
Tel:   (415) 986-1338
Fax:   (415) 986-1231

SUSAN SHER (SBN WA 14210)
LAW OFFICES OF SUSAN SHER
116 South State Street
Ukiah, California 95482
Tel:   (707) 463-1196
Fax:   (707) 462-6258

CHRIS R. REDBURN (SBN 77858)
LAW OFFICES OF CHRIS R. REDBURN
785 Market Street, Suite 1150
San Francisco, CA 94103
Tel:   (415) 512-7601
Fax:   (415) 512-1031


Attorneys for Plaintiff
SHARON L. LEUZINGER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHARON L. LEUZINGER, | ) | NO. CV-06-0398-SBA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SECOND DECLARATION OF** |
| | ) | **RICHARD M. PEARL IN SUPPORT** |
| v. | ) | **OF PLAINTIFF'S MOTION FOR AN** |
| | ) | **AWARD OF REASONABLE** |
| | ) | **ATTORNEYS' FEES** |
| | ) | |
| COUNTY OF LAKE, | ) | |
| | ) | Date:        March 25, 2008 |
| Defendant. | ) | Time:        1:00 p.m. |
| | ) | Courtroom:   The Hon. Saundra |
| | ) | Brown Armstrong |
| _____ | ) | |

I, RICHARD M. PEARL, do declare under penalty of perjury as follows:

1.  I am a member in good standing of the California State Bar.  This declaration is submitted in response to the Court's Order of May 12, 2008, requesting additional briefing on whether, in light of the decisions of other courts in similar circumstances, a 2.0 multiplier should be applied to the attorneys' fees award here.

2.  Briefly summarized, my background is as follows:  I am a 1969 graduate of Boalt Hall School of Law, University of California, Berkeley.  After graduation, I spent fourteen years in federally funded legal services programs before going into private practice in 1982.  From 1977 to 1982, I was Director of Litigation for California Rural Legal Assistance, Inc., a statewide legal services program with more than fifty attorneys.  Since April 1987, I have been a sole practitioner in the San Francisco Bay Area.  Martindale Hubbell rates my law firm "AV." I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005, 2006, and 2007. A copy of my Resume was attached to my previous declaration in this matter as Exhibit A.

3.  Since 1982, my practice has been a general civil litigation and appellate practice, with an emphasis on cases and appeals involving court-awarded attorneys' fees.  I have lectured and written extensively on court-awarded attorneys' fees.  I have been a member of the California State Bar's Attorneys Fees Task Force and have testified before the State Bar Board of Governors and the California Legislature on attorneys' fee issues.  I am the author of <u>California Attorney Fee Awards, 2d Ed.</u> (Calif. Cont. Ed. of Bar 1994), and its 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, and 2007 Supplements.  This treatise has been cited by the California appellate courts on more than 30 occasions.  I also authored the 1984, 1985, 1987, 1988, 1990, 1991,

1992, and 1993 Supplements to its predecessor, CEB's <u>California Attorney's Fees</u>

<u>Award Practice</u>.  In addition, I authored a federal manual on attorneys' fees entitled

<u>Attorneys' Fees:  A Legal Services Practice Manual</u>, published by the Legal

Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume

2 of CEB's <u>Wrongful Employment Termination Practice, 2d Ed.</u> (1997).

    4.  More than 90% of my practice is devoted to issues involving court-

awarded attorney's fees.  I have been counsel in over 140 attorneys' fee

applications in state and federal courts, primarily representing other attorneys.  I

also have briefed and argued more than 40 appeals, at least 25 of which have

involved attorneys' fees issues.  In the past five years, I have successfully handled

four cases in the California Supreme Court involving court-awarded attorneys' fees:

1) <u>Delaney v. Baker</u> (1999) 20 Cal.4th 23, which held that heightened remedies,

including attorneys' fees, are available in suits against nursing homes under

California's Elder Abuse Act;  2) <u>Ketchum v. Moses</u> (2001) 24 Cal.4th 1122, which

held, inter alia, that contingent risk multipliers remain available under California

attorney fee law, despite the United States Supreme Court's  contrary ruling on

federal law (note that in <u>Ketchum</u>, I was primary appellate counsel in the Court of

Appeal and "second chair" in the Supreme Court); 3) <u>Flannery v. Prentice</u> (2001) 26

Cal.4th 572, which held that in the absence of an agreement to the contrary,

statutory attorneys' fees belong to the attorney whose services they are based

upon; and 4) <u>Graham v. DaimlerChrysler Corp.</u> (2004) 34 Cal.4th 553, which I

handled, along with trial counsel, in both the Court of Appeal and Supreme Court.  I

also successfully represented the successful plaintiffs in a previous attorneys' fee

decision in the Supreme Court, <u>Maria P. v. Riles</u> (1987) 43 Cal.3d 1281.

    5.  I have been retained as an expert witness on attorneys' fee issues on at

least 25 occasions, on behalf of both fee claimants and those opposing fee

applications.  On at least 10 occasions, I have been qualified as an expert on attorneys' fees in judicial proceedings and arbitrations.  I also have served as an arbitrator and mediator of attorney fee issues.

6.  I am aware of the following cases in which multipliers of 2.0 have been applied in individual employment cases in California:

(1)  <u>Crommie v. California Public Utilities Comm.</u> (N.D. Cal. 1994) 840 F.Supp. 719,  aff'd sub nom Mangold v. California Public Utilities Comm. (9th Cir. 1995) 67 F.3d 1470 – 2.0 multiplier applied under private attorney general statute and FEHA based on the contingent nature of the representation, the difficulty of the litigation, including the complex nature of the evidence and a vexatious defense, the success on the merits, and the public interest value.  The court held that the defendant's status as a public entity weighed in favor of the public interest value of the result;

(2)  <u>Johnson-Klein v. Fresno State</u>, Fresno County Superior Court No. 05 CECG 02645 (Tentative Ruling dated March 25, 2008) – 2.0 multiplier applied under FEHA based on the contingent nature of the representation, the high quality of the work of plaintiff's counsel, the results obtained, the preclusion of other employment, and the difficulty of litigating against a large and locally powerful institutional defendant;

(3)  <u>Collins v. E.P. Anderson Group, Inc.</u>, Los Angeles Superior Court No. BC 293111 (Tentative decision on motion for attorneys' fees: granted, filed June 4, 2004) – 2.0 multiplier applied under Civil Code (for civil rights violations) and Labor Code (for wage violations) citing <u>Ketchum v. Moses</u>, 24 Cal.4th 1122, 1138 (Cal. 2001);

(4)  <u>Pooshs v. Fluoroware, Inc.</u>, 83 F.3d 428 (9th Cir. 1996) [Memorandum decision not cited as precedent] – affirming 2.0 multiplier under

FEHA based on the difficulty of the case, the preclusion of other employment, and the contingent nature of representation. A true and correct copy of the Ninth Circuit decision in <u>Pooshs</u> is attached hereto as Exhibit A;

(5) <u>Bucci v. Chromalloy American Corp.</u>, N.D. Cal. No. C 85-8768 TEH (Order filed September 15, 1989), aff'd 927 F.2d 608 (9th Cir. 1991) [Memorandum decision not cited as precedent] – affirming 2.0 multiplier applied under FEHA based on the contingent nature of representation. A true and correct copy of the Ninth Circuit decision in <u>Pooshs</u> is attached hereto as Exhibit B.

(6) <u>Resnick v. City & County of San Francisco</u>, N.D. Cal. No. C-88-0011 SAW, Memorandum and Order filed September 6, 1990 – 2.0 multiplier applied under FEHA;

(7) <u>Tamura v. Board of Education</u>, Alameda County Superior Court No. 639203-3 (Order and Judgment filed March 9, 1990) – 2.0 multiplier applied.

7. I have some familiarity with the case of *Leuzinger v. County of Lake.* *Leuzinger* also presented limited prospects of recovery because of the inherent difficulty of proving significant damages for emotional distress as well as the unavailability of punitive damages against a public entity. The excellent results obtained in this case could not have been made without a substantial outlay of attorney time and resources;

8. Based on my familiarity with the facts and procedural background of this case as well as my experience in the area of attorney fee awards, I believe that an award of reasonable attorneys' fees in this case is deserving of a 2.0 multiplier. My conclusion is based on the following factors:

(1) <u>Contingent risk.</u> In my experience, attorneys who litigate on a contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard fought cases

where the result is uncertain.  In my opinion, this does not result in any "windfall" or

undue "bonus" for Plaintiffs' counsel.  Attorneys who assume representation of

plaintiffs on a purely contingent basis in consumer and other public interest cases

are entitled to receive fees equivalent to those paid in the private legal marketplace.

In the legal marketplace, a lawyer who assumes a significant financial risk on behalf

of a client rightfully expects that his or her compensation will be significantly greater

than if no risk was involved (i.e., if the client paid the bill on a monthly basis).  In

fact, an expert economist who testified in two cases in which I was involved opined

that, based on a statistical risk analysis, attorneys who take cases on a contingent

basis should receive from three to six times the market rates paid to attorneys on a

non-contingent basis.  Adjusting court-awarded fees upward in contingent fee

cases to reflect the risk of loss simply makes them competitive in the legal

marketplace, helping to ensure that meritorious cases will be brought to enforce

important public interest policies and that clients who have meritorious claims will

be more likely  to obtain qualified counsel.  In this case, I can state without

hesitation that knowing at the time how vehemently and uncompromisingly this

case would be resisted by the Defendant, combined with the overall difficulty of

disability discrimination cases in general, few competent attorneys would be willing

to take this case on a contingent fee basis unless they could expect to recover, if

successful, a fee that was at least twice the hourly rate paid to non-contingent

attorneys;

     (2) <u>The skill of plaintiff's counsel.</u>  I have known plaintiff's attorney

Stephen M. Murphy for many years and am aware of his exceptional skill as trial

counsel.  Additionally, I have worked with plaintiff's attorney Susan Sher in the past

and found her to be able, skilled and very devoted to her clients.  I am also

acquainted with plaintiff's attorney Chris R. Redburn and have known of his work

and reputation as highly-skilled counsel for at least twenty years;

(3) <u>The difficulty and undesirability of the case.</u> Based on my knowledge and experience, disability discrimination cases in general are inherently difficult and complex, especially where, as here, a significant element of damages consists of emotional distress. The difficulty and undesirability of this case in particular was further compounded by defendant's refusal to make a reasonable settlement offer, and the difficulty of litigating against a County government;

(4) <u>The results obtained.</u> I am generally familiar with jury verdicts in for individual plaintiff employment discrimination cases in California. Based on any standard, the jury verdict for $1.67 million obtained here is extraordinary;

(5) <u>The preclusion of other employment.</u> I am generally familiar with how time consuming cases such as this one are and the burdens that accepting and trying such a case place on small and solo firms such as those of plaintiff's counsel here;

(6) <u>The public interest.</u> In particular, the fact that this case involved disability discrimination in employment on the part of a public entity;

9. I further believe that, based on my experience and my review of the information available to me, an award of a 2.0 multiplier in this case would be consistent with the fee awards listed in Paragraph No. 6 above.

I make this declaration of my own personal knowledge. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23rd day of May, 2008 at Berkeley, California.

                                        <u>   /s/ Richard M. Pearl   </u>
                                          RICHARD M. PEARL

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, STEPHEN M. MURPHY, hereby declare as follows:

I am one of the attorneys of record for Plaintiff Sharon Leuzinger in this action and am duly licensed to practice law in the State of California and in the U.S. District Court for the Northern District of California.

I hereby attest that concurrence from attorney and declarant Richard M. Pearl has been obtained in the filing of this Declaration.

I declare under the penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct and, if called as a witness, I could testify competently thereto.

Executed at San Francisco, California, this 23rd day of May, 2008.

 /s/ Stephen M. Murphy
STEPHEN M. MURPHY

**EXHIBIT A**
to Second Declaration of
Richard M. Pearl

83 F.3d 428 (9th Cir. 1996)

Marijan POOSHS, Plaintiff-Appellee,

v.

FLUOROWARE, INC., Defendant-Appellant.

No. 94-16588.

United States Court of Appeals, Ninth Circuit

April 22, 1996

Editorial Note:

This opinion appears in the Federal reporter in a table titled "Table of Decisions Without Reported Opinions". (See FI CTA9 Rule 36-3 regarding use of unpublished opinions)

Argued and Submitted Jan. 9, 1996.

Appeal from the United States District Court for the Northern District of California, No. C-93-1137-MHP; Marilyn H. Patel, District Judge, Presiding.

N.D.Cal., 1994 WL 374540, 1994 WL 449033.

AFFIRMED.

Before: SCHROEDER and TROTT, Circuit Judges, and REED, [*] District Judge.

MEMORANDUM [**]

Defendant-Appellant Fluoroware, Inc. appeals from a jury verdict for Plaintiff on his age discrimination claim, as well as from an award of attorney fees. Fluoroware assigns as error the district court's refusal to instruct the jury that an employer that reduces its work force has no duty to relocate an employee terminated pursuant to that reduction in force. Fluoroware also assigns as error the hourly rate and multiplier used by the district court in calculating the attorney fee award. We affirm.

Facts

Plaintiff Marijan Pooshs, an experienced and highly qualified electrical engineer, was hired in March 1990 by defendant Fluoroware, a manufacturer of equipment used in the production of

semiconductors. Mr. Pooshs was assigned to work out of defendant's branch office in San Jose, California. Pooshs was then 55 years old. Appellant Brief at 6-8. In February 1992, during a period of economic adversity, Fluoroware decided to close the San Jose office, and in July 1992 Pooshs was discharged. Appellee Brief at 8-9.

Fluoroware informed Pooshs that it intended to reassign his responsibilities to a position to be filled at its main facility in Chaska, Minnesota. Fluoroware rejected Pooshs's request to be allowed to relocate to Chaska and resume his duties there, and subsequently hired a younger and less qualified engineer locally. Appellee Brief at 8-11.

Proceedings Below

Plaintiff Pooshs sued defendant Fluoroware, Inc., in a California court, alleging age discrimination in violation of Cal.Civ.Code § 12940, as well as breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant Fluoroware, invoking federal diversity jurisdiction, removed the action to federal district court.

The district court held a hearing on proposed jury instructions on March 22, 1994. At that hearing counsel for defendant Fluoroware requested that the jury be instructed as follows:

When an employer reduces its work force or reorganizes its company for economic reasons, it incurs no duty to transfer or relocate employees to any position in the company.

The court refused to give the instruction as proposed, offering instead to give it with several modifications relating to what the court deemed were factual issues regarding (a) the occurrence of a reduction in force and (b) the existence of a general company policy to relocate workers whose jobs had been eliminated. [1] Defense counsel declined the instruction as modified by the court, and the court thereupon ruled that the "no duty to relocate" instruction would not be given to the jury. [2]

The jury found Fluoroware liable on all three of plaintiff's theories of liability, awarding plaintiff $450,000 in economic damages and an additional $50,000 in noneconomic damages. The district court entered judgment for plaintiff Pooshs in the amount of $500,000. After a hearing the court awarded plaintiff costs and attorney fees in the amount of $279,414.20.

Discussion

I. The Jury Instruction

Fluoroware assigns as error the refusal of the district court to instruct the jury that an employer has no duty to relocate employees whose jobs are eliminated pursuant to a reduction in work force or a corporate reorganization. Appellant's Brief at 3.

A. Preservation of Error

Pooshs, however, submits that Fluoroware failed to fulfill Fed.R.Civ.P. 51's requirements that a party must object to the giving or the failure to give a jury instruction before the jury begins deliberations, and must also "distinctly state the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Failure to comply with Rule 51 forecloses review of rulings on jury instructions. Id.; McGonigle v. Combs, 968 F.2d 810, 823 (9th Cir.), cert. dismissed sub nom. Casares v. Spendthrift Farm, Inc., 113 S.Ct. 399 (1992).

Although we generally demand strict compliance with Rule 51, a party may seek review of a ruling on jury instructions, despite its failure to lodge a formal objection, where the record shows the trial court to have been fully aware of the party's objections and the grounds therefor and that further objection would have been futile. United States ex rel. Reed v. Callahan, 884 F.2d 1180 (9th Cir.1989), cert. denied, 493 U.S. 1094 (1990).

Prior to the district court's ruling on the proposed "no duty to relocate" instruction Defendant Fluoroware filed points and authorities in support of the instruction. The court indicated at a hearing that it would not give the proposed instruction without several modifications. Defense counsel complained that the modification relating to the existence of a company relocation policy was not supported by the evidence. The court disagreed, and defense counsel rejected the instruction as modified, to which the court replied, "then [the instruction] won't be given."

At the conclusion of the hearing the court asked whether counsel requested any additional instructions other than the stock instructions regarding deliberations or any on which the court had previously ruled, to which both plaintiff's and defendant's counsel responded in the negative. Appellant's Reply Brief at 3. The court's question indicated, by negative implication, that it would not entertain further argument or objections respecting jury instructions on which it had already ruled.

Where a party has made clear to the court its position on a proposed jury instruction, and "it is plain that further objection would be unavailing," Rule 51 does not require the making of an additional fruitless objection in order to preserve for appeal an objection to the court's ruling on the instruction. Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1370 (9th Cir.1979). The purpose of Rule 51 is the prevention of unnecessary new trials resulting from errors in jury instruction which could have been corrected by the trial court if brought to the court's attention before the jury begins deliberations. Rule 51 "was not intended to require pointless formalities." Brown, 603 F.2d at 1371 (quoting Robinson v. Heilman, 563 F.2d 1304, 1306 (9th Cir.1977)).

Here, as in Brown, the district court was plainly aware of Fluoroware's position regarding the proposed "no duty to relocate" instruction and the court's proposed modifications of that instruction. The court's refusal to give the instruction without the proposed modifications represented a final decision on the matter, and it was thus clear that any further objections on the matter would have been pointless and wasteful of the court's time. Brown, 603 F.2d at 1370 (citing Stewart v. Ford Motor Co., 553 F.2d 130, 140 (D.C.Cir.1977)).

In this situation, "[t]o require [defendant/appellant] to object after the instructions were

given is to require a pointless formality. To preclude review of the court's instructions on this basis would exalt form over substance...." Brown, 603 F.2d at 1371. Therefore, defendant Fluoroware properly preserved its objection.

B. Propriety of the Ruling

In this Circuit, where the parties dispute the sufficiency of evidence to support a jury instruction, the ruling of the trial court is reviewed for an abuse of discretion. United States v. Hairston, 64 F.3d 491, 493 (9th Cir.1995) (citing United States v. Duran, 59 F.3d 938, 940 (9th Cir.), cert. denied, 116 S.Ct. 535 (1995). Our inquiry is whether the jury instructions as a whole were misleading or otherwise inadequate to guide the deliberations of the jury. People v. McGravey, 14 F.3d 1344, 1346 (9th Cir.1994).

Appellant Fluoroware submits that the evidence did not justify an instruction to the jury regarding the existence of any "relocation policy." It is true that the portion of the employee manual relating to relocation deals only with the procedure for relocating an employee once the decision to relocate her has been taken by management. The manual is silent on the criteria used in making the decision whether or not to relocate an employee.

Moreover, the evidence adduced by plaintiff that several employees were relocated during fiscal year 1992--the period during which Appellant claims that economic hardship forced it to eliminate 13 percent of its work force--is simply not evidence that Fluoroware had ever relocated a terminated employee, much less made such a practice a matter of policy.

On the other hand, Appellee produced evidence that seven employees were transferred between 1991 and 1994. First, in evaluating the bona fides of Fluoroware's reduction in force defense, only those relocations which occurred during the relevant period of economic hardship are relevant. There were three: Marshall, Anderson, and Sturm. The other relocations occurred after the end of fiscal year 1992, and thus have no bearing on the validity of Fluoroware's defense based on a reduction in force and/or corporate reorganization which it claims to have carried out during that fiscal year.

Second, not one of these three employees was relocated following a management decision to eliminate their jobs. Marshall was a brand-new hire, Anderson was a promotion, and Sturm was a lateral transfer. The evidence of these "relocations," therefore, falls vastly short of establishing any company policy of relocating terminated employees. [3]

Nonetheless, to the extent that Pooshs claims discrimination in Fluoroware's decision not to rehire him in Chaska, [4] the evidence that during the relevant period Fluoroware was relocating employees would have justified an instruction to the jury that any relocation policy must be applied evenhandedly, without regard to an employee's age. The "no-duty-to-relocate" instruction proposed by Fluoroware would have been misleading: As proposed, the instruction elided the distinction between the lack of any absolute duty to relocate employees and the affirmative duty to apply any existing relocation policy fairly.

The district court was thus well within her discretion to offer modifications to the proposed instruction. Defendant's trial counsel was apparently unwilling to attempt to tailor the proposed instruction so that it would accord with the court's understanding of the law. In the face of defense counsel's refusal to negotiate, it was no abuse of discretion for the district court to withhold the proposed instruction.

Even assuming, arguendo, that the district court's proposed modifications to the "no-duty-to-relocate" instruction were either legally inaccurate or without basis in the evidence, defense counsel's precipitous refusal to negotiate constitutes invited error, precluding review of the district court's ruling. United States v. Guthrie, 931 F.2d 564, 567 (9th Cir.1991). In response to the court's proposed modifications, defense counsel expressed exasperation, saying "Well, your Honor, I mean, I think to try to redo that instruction now to fit everybody's view of the evidence and the law would be an impossible task." The district court replied, "Then it won't be given. Okay." Defense counsel answered, "Understood." In this way Fluoroware "induced" any erroneous ruling, and may not now complain that such ruling constitutes reversible error. United States v. Baldwin, 987 F.2d 1432, 1437 (9th Cir.),cert. denied, 113 S.Ct. 2948 (1993).

II. The Attorney Fee Award

Fluoroware also assigns as error the district court's award of attorney fees to Pooshs in the amount of $279,414.20. Fluoroware does not challenge either Pooshs's entitlement to a fee award, or the determination of the number of hours for which Pooshs's lawyer should have been compensated. It does challenge the $335 hourly rate used by the district court to calculate that portion of the fee award to be paid plaintiff's lead counsel, and it challenges as well the district court's application of a multiplier of two. Appellant Brief, at 28. Fluoroware submits that these two determinations were both abuses of the district court's discretion.

Where a federal court, sitting in diversity, adjudicates a claim based on a state anti-discrimination statute, an award of attorney fees is governed by state law. Crommie v. State of California Pub. Util. Comm'n, 840 F.Supp. 719, 724 (C.D.Cal.1994), aff'd in part sub nom. Mangold v. State of California Pub. Util. Comm'n, 67 F.3d 1470 (9th Cir.1995). Because Pooshs brought his age discrimination claim under California law, Pooshs was awarded attorney fees not under the federal attorney fee statute, but pursuant to Cal.Gov't Code § 12965(b). [5]

A. The Hourly Rate

Under California law, the reasonable hourly rate for a lawyer's services is that rate prevailing in the community for similar work. Shaffer v. Superior Court, 33 Cal.App.4th 993, 1002, 39 Cal.Rptr. 506, 512 (1995),review denied (June 15, 1995). The determination of a reasonable hourly rate for the purpose of an award of attorney's fees is committed to the sound discretion of the trial court, and a reviewing court must permit that determination to stand absent a "manifest abuse of discretion." Walters v. Marler, 83 Cal.App.3d 1, 36, 147 Cal.Rptr. 655, 677 (1978). An award of attorney fees may be reversed only where the amount is so large or so small as to shock the conscience of the appellate court and suggest that passion and prejudice influenced the determination. Shannon v. Northern Counties Title Ins. Co., 270 Cal.App.2d 686,

689, 76 Cal.Rptr. 7, 9 (1969). Moreover, the trial court need not take testimony or any other direct evidence of the reasonable value of the fee applicant's legal services; the knowledge and experience of the trial judge is sufficient. Clejan v. Reisman, 5 Cal.App.3d 224, 241, 84 Cal.Rptr. 897, 908 (1970).

Fluoroware complains that the district court's "failure to consider the billing rates charged by defense counsel" constituted an abuse of discretion. Fluoroware is dead wrong. The record reveals extensive consideration by the district court of defense counsel's fees. The court's response to defense counsel's argument that plaintiff's counsel should be awarded fees based on an hourly rate comparable to that paid defense counsel was that at $125 per hour defense counsel was vastly underpaid. The court's finding that $125 was far below the market rate for an hour of a San Francisco lawyer's time does not, in this court's opinion, constitute a "manifest abuse of discretion."

B. The Multiplier

Fluoroware's final contention is that the district court's use of a multiplier in computing the fee award was the result of the court's faulty understanding of the law, and constituted an abuse of discretion. Appellant Brief, at 32.

In Serrano v. Priest, 569 P.2d 1303 (Cal.1977) (Serrano III), the California Supreme Court approved the use of a fee multiplier following consideration by the trial court of a number of factors, including (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, both from the point of view of eventual victory and the point of view of establishing eligibility for an award. Id. at 1317.

As the district court found, Mr. Pooshs, by prevailing in this case, has vindicated the important public policy against "individual workplace discrimination." The use of a fee multiplier serves to encourage lawsuits effectuating some strong public policy by awarding substantial attorney's fees to individuals who successfully bring such suits and thereby benefit a broad class of citizens. Serrano III, 569 P.2d at 1312.

Fluoroware, however, argues that the district court's use of a fee multiplier constituted an abuse of discretion because plaintiff Pooshs was not acting as a private attorney general within the meaning of Serrano III or Cal.Civ.Proc.Code § 1021.5. The Serrano III fee-multiplier factors apply whether a litigant seeks an award of attorney fees under the "private attorney general" theory or under some other statute. See Downey Cares v. Downey Community Dev. Comm'n. 242 Cal.Rptr. 272, 278 (Cal.Ct.App.1987) (utilizing fee multiplier in award of attorney fees under Cal.Gov't Code § 91003). Pooshs was entitled to an award of reasonable attorney fees under Cal.Gov't Code § 12965(b). The question whether Pooshs acted as a private attorney general is therefore irrelevant.

The district court found (1) that the case was particularly difficult and complex, (2) that

plaintiff's counsel were precluded during the case from accepting other more lucrative and easier employment and (3) that the highly contingent nature of the case made it difficult for the plaintiff to entice competent counsel to accept his case. Such findings fulfilled the district court's obligation to evaluate counsel's fee application in light of the various Serrano III factors. It was therefore no abuse of discretion to utilize a multiplier of two in awarding fees.

AFFIRMED.

[*] Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

---------

Notes:

[**] This disposition is not intended for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

[1] At the hearing on jury instructions, the district court ruled from the bench:

The only way that I will give this instruction is as follows; and, that is, you know--you know, it's up--first of all, it is an issue of fact as to whether or not there was a reorganization or reduction in force such as to invoke this [instruction]. Number one. And, number two, that if however the company has a policy then certainly that is an issue. With respect to relocation ... then you must return--then it must apply that policy fairly to--to all employees; and it invokes essentially the age discrimination provisions, and it invokes the implied covenant of good faith and fair dealing. Now I don't know if you want all that in there, but that's the only way I would give it.

E.R. 55, at 1084-85.

[2] The complete instructions given the jury are reproduced at S.E.R. 22-38.

[3] Defendant/Appellant has not assigned as error the admission in evidence of these seven "relocations," so the court has no occasion to address the propriety of that ruling.

[4] The jury answered special verdict forms, which asked both "Did defendant have a legitimate, nondiscriminatory reason for discharging plaintiff?" as well as "Did defendant have a legitimate, nondiscriminatory reason for not hiring plaintiff for the position in Minnesota?" E.R. 60, at 2. The "no-duty-to-relocate" instruction in the form proposed by Fluoroware, without the modification which made clear that any relocation policy must be applied fairly, would have been confusing and misleading. It would have given the jury the impression that Fluoroware was not obliged to consider Pooshs' request to continue his responsibilities in Minnesota. It would further have created a conflict with the special verdict question regarding Fluoroware's decision not to rehire Pooshs.

[5] That section provides, in relevant part, "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney fees and costs except where such action is filed by a public agency or a public official, acting in an official capacity." Cal.Gov't Code § 12965(b) (West 1992 & Supp.1994).

# EXHIBIT B
to Second Declaration of
Richard M. Pearl

927 F.2d 608 (9th Cir. 1991)

Dorothy BUCCI, Plaintiff-Appellee,

v.

CHROMALLOY AMERICAN CORPORATION, Defendant-Appellant,and

Liberty Radiator Division, Dan Montemayor, Defendant.

Nos. 89-16344, 89-16460.

United States Court of Appeals, Ninth Circuit

March 5, 1991

Editorial Note:

This opinion appears in the Federal reporter in a table titled "Table of Decisions Without Reported Opinions". (See FI CTA9 Rule 36-3 regarding use of unpublished opinions)

Argued and Submitted Feb. 11, 1991.

61 Fair Empl.Prac.Cas. (BNA) 616

On Appeal from the United States District Court for the Northern District of California, No. CV-85-8768-TEH; Thelton E. Henderson, District Judge, Presiding.

N.D.Cal.

AFFIRMED.

Before: TANG, SKOPIL, and THOMPSON, Circuit Judges

MEMORANDUM [*]

These are consolidated appeals challenging the district court's award of attorneys' fees to a prevailing plaintiff. Defendant contends that the fee award should be reduced because the district court erroneously (1) included fees for work on unsuccessful claims; (2) used a contingency risk multiplier; and (3) awarded excessive fees for the preparation of the fee petition. We conclude that the district court correctly applied the applicable standards in setting the fee awards and made the necessary findings to support its decision. Accordingly, we affirm.

I

In 1985, Dorothy Bucci filed this diversity action against her employer, Chromalloy American Corporation, alleging violations of the California Fair Employment and Housing Act, Cal.Gov't.Code § 12940 (1980), based on claims of sexual harassment and sex discrimination. Following a bench trial, the district court concluded that Bucci had proved "that a hostile environment was created by sexual harassment sufficiently severe and pervasive to alter the conditions of plaintiff's employment and create an abusive working environment." The court awarded Bucci $55,000 in compensatory damages.

Bucci applied for an award of attorneys' fees pursuant to Cal.Gov't.Code § 12965(b). The district court concluded that fees should be awarded "according to the well-established lodestar/multiplier method adopted by both federal and state courts." The court calculated a lodestar of $131,379.50 and applied a contingent risk multiplier of 2.0 for a primary fee award of $262,759.00 In addition, the court awarded Bucci $23,128.00 to compensate her for expenses incurred in the litigation over attorneys' fees. The employer appeals both awards.

II

California law clearly authorizes the district court to make an award of "reasonable attorney fees" to the prevailing party in this case. Cal.Gov't.Code § 12965(b). The employer raises a threshold question of whether state or federal law should govern the determination of a "reasonable fee." We conclude that there are no significant differences between state and federal law in this regard, and elect to apply federal law in determining the reasonableness of a fee award under section 12965(b). See Ackerman v. Western Elec. Co., 860 F.2d 1514, 1520 n. 5 (9th Cir.1988) (noting there is no significant difference between state and federal law regarding fee awards made under section 12965(b)).
Under federal law, a court awarding attorneys' fees must first determine the lodestar by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir.1990). The court may thereafter increase or decrease the lodestar based on factors identified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951 (1976), that are not subsumed within the initial calculation of the lodestar. D'Emanuele, 904 F.2d at 1383. The employer here challenges both of these steps. We apply an abuse of discretion standard in reviewing the district court's fee award, including the use of a multiplier. Hall v. Bolger, 768 F.2d 1148, 1150 (9th Cir.1985).

1. Determination of the Hours Reasonably Expended

The starting point for calculating the lodestar is the determination of the number of hours reasonably expended on the case. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). Here, Bucci initially sought compensation for 761 attorney hours and 471.3 law clerk hours. The district court reasoned that a reduction was appropriate in light of the lack of novelty or complexity of the case. Accordingly, the compensable time was reduced to 621 attorney hours and 401.3 law clerk hours.

The employer first contends that the district court erred by not making a further reduction to reflect Bucci's relatively small recovery. We must reject that contention. It is clear that fee awards in civil rights cases cannot be tied to the amount of the recovery. See City of Riverside v. Rivera, 477 U.S. 561, 581 (1986) (refusing to adopt a rule of proportionality of fees and recovery); Quesada v. Thomason, 850 F.2d 537, 540 (9th Cir.1988) (district court should not reduce attorneys' fees simply because the damage award was less than amount sought).

The employer also argues that Bucci should not have been compensated for work performed on unsuccessful claims. We have stated that a reduction in the lodestar is justified when a plaintiff fails "to obtain relief on all claims, and if hours spent on unsuccessful claims were not needed to pursue successful claims." Id. at 539. The applicable test is whether plaintiff's unsuccessful claims were related to her successful claims. See Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir.1986). The test is not precise, but generally, claims are related if they "involve 'a common core of facts' or will be based on related legal theories, ... while unrelated claims will be 'distinctly different,' and based on different facts and legal theories." Id. (quoting Hensley, 461 U.S. at 434 & 435).

Here, we agree with the district court that all of Bucci's claims were related and closely intertwined. The commonality of her claims was that she challenged a single course of conduct consisting of harassing and unequal treatment by her employer. Nevertheless, even when unsuccessful and successful claims are related, a court must also evaluate " 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' " Thorne, 802 F.2d at 1141 (quoting Hensley, 461 U.S. at 435). Full compensation is appropriate only when a plaintiff obtains excellent results; if only partial or limited success is obtained, full compensation may be excessive. Id.

We agree with the district court that Bucci's success was not limited. The court found that "plaintiff prevailed on the most significant claim in her complaint ... and received a $55,000 judgment in a sexual harassment case where there was no actual wage or benefit loss." The court further noted that "plaintiff's victory served an important public interest in that it re-affirmed the right to a work environment free of demeaning and discriminatory treatment based on sex." Such determinations "are within the district court's discretion." Id. We agree with the court's conclusion that Bucci's success was substantial in that she prevailed on the most significant claim in her complaint.

## 2. Contingent Risk Multiplier

There is a strong presumption that the lodestar is reasonable and should be adjusted "only in rare or exceptional cases." Cunningham v. County of Los Angeles, 879 F.2d 481, 488 (9th Cir.1988), cert. denied, 110 S.Ct. 757 (1990). One such "circumstance that may lead to an adjustment of the lodestar figure is whether payment for the attorney's services is contingent upon success and the attorney bears the risk of nonpayment in case of failure." D'Emanuele, 904 F.2d at 1384. There is no dispute here that payment to Bucci's attorney was contingent upon success and that the attorney risked nonpayment.

We have noted that the presence of a risky contingent fee arrangement permits enhancement of the lodestar if two conditions are met. Id. First, the fee applicant must establish that without an adjustment for risk, there would have been substantial difficulties in finding counsel in the relevant market. Id. Second, any enhancement must reflect the market treatment of contingent fee cases as a class rather than the riskiness of the particular case. Id. The district court, relying principally on our decision in Fadhl v. City and County of San Francisco, 859 F.2d 649, 650-51 (9th Cir.1988), concluded that Bucci satisfied both conditions.

In Fadhl, the plaintiff "approached 35 lawyers before she found one who would represent her." Id. at 651. We found that fact to be "strong support for the proposition that in the absence of risk enhancement, [plaintiff] would have faced substantial difficulties in retaining an attorney." Id. In contrast, Bucci was able to secure counsel on her first inquiry. We nevertheless agree with the district court that Bucci satisfied the first condition of demonstrating substantial difficulty in obtaining counsel. She did so by submitting unopposed attorneys' affidavits detailing their reluctance to take on such cases without the potential of enhanced compensation. See McKenzie v. Kennickell, 875 F.2d 330, 337 (D.C.Cir.1989) (plaintiffs should be required only to establish that they would have faced substantial difficulties securing counsel for their cases).

Bucci also satisfied the second requirement by submitting evidence to demonstrate the market treatment of similar cases. In fact, Bucci submitted the same evidence that we determined was sufficient to support a multiplier in Title VII litigation in the same relevant market. See Fadhl, 859 F.2d at 650-51.

3. Fees on Fees

Under both state and federal law, a court may award attorneys' fees to a prevailing party to compensate for the expense of preparing an application for fees. Serrano v. Unruh, 32 Cal.3d 621, 623-24, 186 Cal.Rptr. 754, 754-55, 652 P.2d 985, 985-86 (1982); Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir.1986). The district court here awarded a lodestar amount of $23,128.00, representing 110.8 hours of attorney time at varying rates and 18 hours of paralegal and secretarial time at varying rates. The employer's only argument is that Bucci unduly complicated the fee application process by submitting unnecessary authority in support of fees. Given the complexity of the law in this area, however, we reject the argument that the work on the fee application was either excessive or unnecessary.

AFFIRMED.

---------

Notes:

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.