UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SHARON LEUZINGER,<br><br>    Plaintiff,<br><br>vs.<br><br>COUNTY OF LAKE,<br><br>    Defendant. | Case No: C 06-00398 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>[Docket 173, 174] |

The parties are presently before the Court on plaintiff Sharon L. Leuzinger's Motion for an Award of Reasonable Attorney Fees. (Docket 173, 174). Having read and considered the papers submitted, and having reviewed the file, the Court hereby GRANTS in and DENIES in part the motion for fees.

I.  **BACKGROUND**

   A.  **FACTUAL OVERVIEW**

Plaintiff worked for sixteen years for defendant County of Lake (the "County") as a juvenile hall correctional officer. In 1998, she injured her left wrist while supervising a juvenile hall softball game. Leuzinger alleges other than brief medical leaves immediately following the injury, and again in 2002 and 2003 for injury-related surgeries, she consistently performed her job's essential functions, until forced to take involuntary disability retirement in 2004.

Although allegedly aware of Plaintiff's wrist pain and related limitations during the six years after her injury, the County did not provide her with a reasonable accommodation nor question her ability to perform her job's essential functions. In mid-2004, however, shortly after Plaintiff began a medical leave of absence for surgery and radiation treatments related to a breast

cancer diagnosis, the County allegedly decided she could longer perform her duties, due to restrictions related to her wrist injury.

Plaintiff asserts that the County made its decision without engaging in a good faith interactive process or consulting with her treating physician who felt she could perform the essential functions of her job.  She allegedly sought an accommodation from the County's risk management and personnel departments, as well as its Board of Supervisors, to no avail.  In June 2004, she applied for disability, which was granted in December 2004, at approximately half her former salary, though she was required to pay for her own health insurance.  In August 2004, Leuzinger retained attorney Susan Sher, contacted the California Department of Fair Employment and Housing ("DFEH"), and then filed a disability discrimination complaint.

### B. PROCEDURAL SUMMARY

Plaintiff filed a civil complaint against the County in this Court on January 20, 2006.  On February 13, 2007, she filed an amended complaint alleging nine claims: (1) discrimination under 42 U.S.C. § 1983; (2) disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., based on her wrist injury; (3) disability discrimination under section 12940(a) of the FEHA, based on her wrist injury; (4) disability discrimination under section 12926(h) of the FEHA, based on her cancer; (5) failure to engage in an interactive process under section 12940(n) of the FEHA; (6) failure to accommodate her wrist injury under section 12940(m) of the FEHA; (7) unlawful discharge and discrimination under 29 U.S.C. § 2614(a)(1) of the Family Medical Leave Act (the "FMLA"); (8) unlawful discharge and discrimination under section 12945 of the FEHA; and (9) wrongful termination in violation of public policy.  See Docket No. 22.

The County moved for summary judgment, which the Court denied on February 23, 2007. (Docket 43.)   On June 19, 2007, approximately three months prior to trial, Sher associated attorneys Stephen M. Murphy and Jeremy A. Graham as trial counsel.  On July 10, 2007, Leuzinger dismissed her first and second claims.  (Docket 74.)

The jury trial in this matter commenced on September 13, 2007.  The jury returned a verdict for the Plaintiff on her third, fifth, and sixth claims, and awarded her $69,000 for past economic

loss, $360,000 for future economic loss, $1,250,000 for past noneconomic loss, and $1.00 for future noneconomic loss, for a total award of $1,679,001.

Due to a delay in preparing the transcripts, the Court stayed entry of the judgment, until October 31, 2007. On November 19, 2007, Plaintiff associated in attorney Chris R. Redburn to assist with post-trial and appellate matters. On February 5, 2008, the Court denied motions by the County for judgment as a matter of law or a new trial. On February 5, 2008, the Court taxed costs of $24,324.54 against the County.

On February 14, 2008, Plaintiff filed the instant Motion for an Award of Reasonable Attorney Fees (the "Motion") seeking $941,264 in attorneys' fees.[1] (Docket 174.) The County does not dispute Murphy, Redburn or Graham's hours or rates, Sher's paralegal's rate, the hours spent on the Motion, or out-of-pocket expenses. It does, however, oppose the amount of hours spent by Sher hours and her billable rate, the hours expended by her paralegal and Plaintiff's requested multiplier. In May 2008, the Court requested supplemental briefs on this matter's multiplier, which were received in June 2008.

## II.    LEGAL STANDARD

"A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Further, unless a statute or a court order provides otherwise, the motion must: (ii) specify the lawful grounds entitling the movant to the award; (iii) state the amount sought; and (iv) disclose, if the court so orders, the terms of any fee agreement. Id. 54(d)(2)(B). Plaintiff request for attorneys' fees arises under the FEHA, which provides the Court with the discretion to award a prevailing party reasonable attorneys' fees. Cal. Gov. Code § 12965(b); Flannery v. Prentice, 26 Cal.4th 572, 582-83, 28 P.3d 860 (2001). In awarding fees under the FEHA, federal courts refer to California law, Beaty v. BET Holdings, Inc., 222 F.3d 607, 610-14 (9th Cir. 2000), which differs in some respects from fee awards under fee-shifting statutes like 42

---

[1] On March 3, 2008, the County appealed the judgment, the denial of its post-trial motions, and all interlocutory orders.

- 3 -

1  U.S.C. § 1988 or § 2000e, <u>Tipton-Whittingham v. City of Los Angeles</u>, 34 Cal.4th 604, 610
2  (2004).

1  The basic, underlying purpose of FEHA is to safeguard the right of an individual to seek, 2 obtain, and hold employment without experiencing discrimination on account of, *inter alia*, 3 physical disability, medical disability, or medical condition.  Gov. Code § 12920; Flannery, 26 4 Cal.4th at 582-83.  The FEHA fee-shifting provision effects this purpose by authorizing an award 5 of attorneys' fees in successful private actions brought to enforce the FEHA, without which, such 6 actions might not be brought at all for lack of willing, capable attorneys to bring them.  Flannery, 7 26 Cal.4th at 582-83.

8  It is settled that fees awards under FEHA are calculated by determining the number of 9 hours reasonably worked by the attorneys who prosecuted the matter and multiplying that number 10 by the reasonable hourly rate those attorneys should receive for such work.  Depending on the 11 circumstances, consideration may also be given to the attorneys' experience, the difficulty of the 12 issues presented, the risk incurred by the attorneys in litigating the case, the quality of work 13 performed by the attorneys, and the result the attorneys achieved.  Id. at 584 (citing Serrano v. 14 Priest, 20 Cal.3d 25, 48 (1977)).

15  Determining the amount of reasonable attorneys' fees entails a two-step procedure.  First, 16 the Court determines "the unadorned lodestar [which] reflects the general local hourly rate for a 17 *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or 18 any other factors a trial court may consider" in augmenting or diminishing it.  Greene v. 19 Dillingham Const., N.A., Inc., 101 Cal.App.4th 418, 427 (2002) (emphasis in original); see Nichols 20 v. City of Taft, 155 Cal.App.4th 1233, 1240 (2007).  Second, the Court may enhance or reduce the 21 lodestar, considering the factors discussed in Flannery, as well as: "(1) the novelty and difficulty of 22 the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature 23 of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the 24 fee award."  Nichols, 155 Cal.App.4th at 1240.

25 **III.   DISCUSSION**

26   **A.   THE LODESTAR**

27  The County disputes Sher's and Skowron's lodestar calculations.  (Opp'n at 6:6-14.)  The 28 Court calculates the lodestar by multiplying "the number of hours reasonably worked . . . by the

- 5 -

reasonable hourly rate. . . ."  Flannery, 26 Cal.4th at 584.  "[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent" in litigating the action to a successful conclusion.  "Reasonably spent" means that time spent "in the form of inefficient or duplicative efforts is not subject to compensation." Horsford v. Bd. of Trs. of Cal. State Univ., 132 Cal.App.4th 359, 394 (2005).  In determining reasonable hours, an attorney's sworn declaration and time records are entitled to "a presumption of credibility."  Horsford, 132 Cal.App.4th at 396.

### 1. Sher's Hours

Sher's declaration and time sheets indicate that she spent 695.90 hours in "attorney" tasks, and 11.15 hours in "clerical" tasks.  (Docket 184 ¶ 18 (Decl. of Susan Sher ("Sher Decl.")), Ex. "A" (time sheets).)  The County challenges these figures on five grounds.  For the reasons discussed below, the Court rejects Sher's billing for clerical tasks, and reduces her attorney hours by 253.72 hours, or from 695.90 hours to 442.18 hours.

#### a) *Duplication of Effort*

The County complains that it was unnecessary for Plaintiff to have two counsel at trial. The Court disagrees.  There were a number of issues to be tried during the six day jury trial, and the use of two attorneys under the circumstances was reasonable.  See Citizens Against Rent Control v. Berkeley, 181 Cal.App.3d 213, 234 (1986) (fees allowed for two attorneys who spent ten hours a day on three consecutive days preparing third counsel for oral argument), and in Margolin v. Regional Planning Commission, 134 Cal.App.3d 999, 1007 (1982) (some duplication of effort by multiple attorneys justified "considering the importance of preparation for trial"). (Mot. at 19.)

The Court also disagrees with the County's assertion that Sher and Murphy were redundant fixtures at trial.  The fact that two attorneys appear at a trial, is not in and of itself, unreasonable. See Horsford, 132 Cal.App.4th at 396 (two attorneys at a deposition not per se unreasonable). Further, the County has failed to show any actual duplicated effort.  Nor is the Court convinced that Sher added nothing to the trial.  Based on the length of discovery and trial, the nature of this case, and the manner in which the work was divided during discovery, pre-trial, and trial, Sher's

1  and Murphy's teamwork approach satisfies Citizens and Margolin. As such, Sher and Murphy's
2  presence as trial was not duplicative and was thus "reasonably spent" time. See Horsford, 132
3  Cal.App.4th at 394.

### b) Sher's Clerical and Paralegal Activities

The County also takes exception to Sher having billed approximately 100 hours for "clerical tasks, such as scanning and copying documents, file organization, trial binder organization. (Opp'n at 19.) The County also complains that she billed some of these tasks at $400 per hour, her attorney's rate, but billed others at $125 an hour, her paralegal rate. (Id.) Citing Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989), the County contends that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." (Opp'n at 19.) In response, Plaintiff claims that Sher's file and exhibit organization work is the type generally performed by an attorney preparing a case for trial, and not simply clerical filing. (Reply at 10.)

The Court declines to award fees based Sher's paralegal work. Sher billed the following activities at a paralegal rate of $125 per hour: (a) 3.7 hours for copying exhibits; (b) 4.25 hours for copying exhibits and organizing them in binders; and (c) 3.2 hours for collating binders and putting exhibit tabs on exhibits. This type of work is clearly secretarial or clerical. Rather than billed to clients, it generally is subsumed in or covered by an attorney's hourly rate, just like any other overhead expense, such as utilities and office supplies. See City of Oakland v. McCullough, 46 Cal.App.4th 1, 7 (1996). The Court thus reduces Sher's paralegal hours by 11.15 hours to zero.

The Court finds that the following billing entries are secretarial or clerical and may not be billed as attorney work at $400 per hour: (a) 1.75 hours on February 15, 2007 for copying documents; (b) 0.25 hours on May 1, 2007 for scanning responses and sending them to Plaintiff; (c) 0.25 hours on July 11, 2007, for sending PDF files to Murphy; (d) 0.4 hours on July 12, 2007 for mailing medical records to Murphy; and (e) 1.2 hours on August 31, 2007 for collating and labeling exhibits. The Court reduces Sher's attorney hours by 3.85 hours.

In contrast, the Court does not find the following challenged entries constitute secretarial or clerical work: (a) 4.0 hours on October 31, 2006 to "[o]rganized file for trial notebook";

(b) 1.0 hours on July 12, 2007 for "[o]rganized file for trial notebook"; and (c) 2.5 hours on August 3, 2007 "[ o]rganizing exhibits as to witnesses[.]"  While these entries could be more explanatory, the Court presumes them as credible.  Horsford, 132 Cal.App.4th at 396.  As such, Sher apparently was reviewing and preparing documents for use at trial, which requires legal analysis.  Sher thus properly billed these activities as attorney work.

Finally, the Court reduces Sher's attorney hours by 0.99 hours to reflect tasks with attorney and clerical or secretarial components: (a) 0.5 hours on June 18, 2007 for organizing records and sending them out;  (b) 5.8 hours on June 27, 2007 for organizing and scanning exhibits sent to Murphy; (c) 1.5 hours on July 13, 2007 for organizing and labeling exhibits; (d) 0.6 hours on July 17, 2007 reviewing, scanning, and sending personal evaluation to Murphy; and (e) 1.5 hours on July 19, 2007 for organizing exhibit file and overnighting to the County.  Reviewing documents requires legal analysis, as does organizing or selecting documents for transmission to other persons.  In contrast, scanning, labeling, and transmitting documents are clerical tasks.  Because Sher did not break out her attorney work from her clerical work, the Court reduces these hours by 10 percent, or 0.99 hours, to account for the clerical portion not billable as attorney work.

### c)   ADR Sanctions

The Court also finds that Sher's hours incurred in seeking sanctions for alleged ADR violations based on the County's violation of ADR Local Rule 5-12.  The motion was denied by Magistrate Judge Brazil.  Though he declined to award sanctions, he did find the County had seriously breached the confidentiality provisions of the ADR Local Rules.  Thus, while Leuzinger's motion for sanctions was unsuccessful, the Court does not concur with the County's position that the motion was unreasonable or frivolous.  Moreover, the County has not cited any legal authority which holds that hours spent on matters collateral to litigation, such as discovery or ADR disputes, are per se "not reasonably spent" advancing a litigation.  Nor is the principle self-evident.  Here, Plaintiff sought to rectify the County's breach of the rules governing the process invoked to settle this litigation, in order to advance it toward settlement.  These hours were thus reasonably spent in litigating this action to a successful conclusion, see Horsford, 132 Cal.App.4th at 394, and they are subject to award under the FEHA.

#### d) Sher's Calls to K. Persky, M.D.

The County asserts the Court should subtract from Sher's hours, a 0.1-hour call on July 27, 2007 and a 0.25-hour call on August 2, 2007, from her to K. Persky, M.D., regarding him or her testifying, as incurred for a separate and distinct claim upon which Plaintiff did not prevail. Plaintiff does not dispute this reduction, which therefore is granted. The Court reduces Sher's attorney hours by 0.35 hours.

#### e) Time Spent on Unsuccessful Claims

Plaintiff asserts that the Court should not reduce her hours based on her failure to prevail on all her claims. She contends that all of her claims arise from a single set of facts; to wit, that the County used her wrist injury as a pretext to ultimately terminate her because she had breast cancer. (Mot. at 16.) Thus, the evidence she gathered was germane to proving under state and federal law the related issues of discrimination, retaliation, a failure to engage in an interactive process, a failure to reasonably accommodate, and a wrongful termination, all causing one set of damages. Further, she asserts that her FEHA, ADA, section 1983, FMLA and termination claims are all legally related, either because they arise from the same facts, or because they are alternative forms of pleading the same or a similar claim.

For its part, the County takes the position that Plaintiff pled five claims related to her wrist injury and four related to her breast cancer diagnosis. (Opp'n at 20-21.) It also claims that Plaintiff dismissed two "wrist-injury" claims, prevailed on the three of them, and lost on her "breast cancer" claims. In addition, the County argues that the evidence gathered for the "wrist-injury" claims had nothing to do with the "breast-cancer" claims, as allegedly shown by the volume of evidence submitted related to the latter and the County's alleged conduct in relation thereto. Id. The County thus requests the Court to reduce Sher's hours by 57 percent for three successful claims out of seven, or by 67 percent for three successful claims out of nine.

Under California law, "it is appropriate to reduce a fee award when a plaintiff prevails on only one of his [or her] causes of action[.]" Greene, 101 Cal.App.4th at 423 (approving over 20 percent reduction in billed hours). Nonetheless, a reduction may be inappropriate where the claims are intertwined because they are based on the same set of facts and course of conduct. Id. "Where

- 9 -

**1** a lawsuit consists of related claims, and the plaintiff has won substantial relief, a trial court has
**2** discretion to award all or substantially all of the plaintiff's fees even if the court did not adopt each
**3** contention raised." Id.  The trial court is generally in the best position to understand the
**4** relationship between the claims and to determine whether time spent on a related claim contributed
**5** to a plaintiff's objectives at trial.  Id.  Further, a trial court should take into account that attorneys
**6** "generally must pursue all available legal avenues and theories in pursuit of their clients'
**7** objectives; it is impossible, as a practical matter, for an attorney to know in advance whether or not
**8** his or her work on a potentially meritorious legal theory will ultimately prevail."  Id. at 424
**9** (citation omitted).

**10**          As an initial matter, the Court observes that Plaintiff prevailed on three of her nine claims.
**11** Specifically, she prevailed on her third claim for disability discrimination and her sixth claim for a
**12** failure to accommodate, both of which arose under the FEHA and based on her wrist injury.  She
**13** also won her fifth claim for a failure to engage in an interactive process, arising under the FEHA.
**14** Sher is entitled to an award of fees for any hours spent prosecuting these claims.  See Greene, 101
**15** Cal.App.4th at 423.

**16**          The same is true as to Plaintiff's second claim for disability discrimination under the ADA.
**17** Although Plaintiff dismissed this claim, it was predicated on her wrist injury.  The County
**18** advances no argument showing how this claim was factually unrelated to Plaintiff's third claim for
**19** wrist-related disability discrimination under the FEHA, on which she prevailed.  Nor does the
**20** County explain how Plaintiff could have reasonably known early on whether her second claim
**21** would be meritorious.  Id. at 424.  Where claims are intertwined because they are based on the
**22** same set of facts and course of conduct, a reduction is inappropriate.  Id. at 423.  Plaintiff's second
**23** and third claims are intertwined, as they are alternative legal theories of recovery predicated on the
**24** same facts, her wrist-related discrimination.  Because she prevailed on one of them, her third claim,
**25** Plaintiff is entitled to an award of fees for hours spent prosecuting the other, her second claim.

**26**          In contrast, the Court finds that Plaintiff is not entitled to a recovery for hours spent on her
**27** first and fourth claims.  With regard to her claim under section 1983, she claims that she "had a
**28** property interest in employment by the County free from discriminatory practices related to her

exercise of said constitutional rights." (Am. Compl. ¶ 42.) And, she alleged that the County deprived her of "rights, privileges and immunities" by her termination and by a lack of "access to a meaningful institutional remedy for violation of her rights." (Id. ¶ 43.) Plaintiff never explains why she brought this particular claim in the first place, nor exactly how it was legally or factually related to any of her other claims. As such, the Court cannot conclude that the hours Sher spent prosecuting this claim were reasonably related to Plaintiff's success at trial, and any fee award should be reduced accordingly.

The same reasons, the Court declines to award fees as to Plaintiff's unsuccessful fourth claim for disability discrimination under the FEHA, which was based on her breast cancer. Plaintiff was successful on claims predicated on her wrist injury but not on claims predicated on her breast cancer. The facts and courses of conduct underlying these claims are not intertwined. Thus, any hours Sher spent pursuing Plaintiff's fourth claim were not reasonably related to her success at trial, and any fee award should be reduced.

Finally, as to Plaintiff's seventh through ninth claims addressing her alleged discharge or termination in violation of the FMLA, the FEHA, and public policy, she asserts that the predicate for her separation was her breast cancer, while the County asserts that it was her wrist injury. Plaintiff also asserts that these three claims were alternative theories of recovery predicated on her assertion that the County's unlawful conduct amounted to a termination. (Mot. at 16.) The Court notes that to the extent this set of claims turned on facts related to Plaintiff's breast cancer, it was reasonably related to her unsuccessful fourth claim predicated on breast cancer, and thus any hours Sher spent prosecuting it are subject to reduction. In contrast, to the extent this set of claims turned on facts related to Plaintiff's wrist injury, it was reasonably related to her successful second and fifth claims predicated on the same injury, and any hours Sher spent prosecuting it are not subject to reduction.

In sum, Plaintiff is subject to a lodestar reduction for her hours spent prosecuting Plaintiff's first and fourth claims, and for some of her hours spent prosecuting Plaintiff's seventh through ninth claims. In contrast, she is not subject to a lodestar reduction for her hours spent prosecuting Plaintiff's second, third, fifth, or sixth claims, or for some of her hours spent prosecuting Plaintiff's

seventh through ninth claims. The County argues that Plaintiff's hours should be reduced by one-ninth for every claim she lost. Plaintiff does not respond with a breakdown of hours spent on each claim or on any theory underlying any set of claims. Nevertheless, the Court agrees with Plaintiff that her seventh through ninth claims are merely three alternative theories of recovery predicated on the same set of facts regarding her release from the County. As such, the Court reduces Sher's 695.9 attorney hours by one-seventh each for Plaintiff's first and fourth claims, and by one-fourteenth for Plaintiff's set of seventh through ninth claims, for a total reduction of five fourteenths, which is approximately 35.7 percent or 248.5 hours.

### 2. Skowron's Hours

The Court denies the County's request to reduce Skowron's hours. Reasonable attorneys' fees may include paralegal services. Guinn v. Dotson, 23 Cal.App.4th 262, 270 (1994). Plaintiff claims that Skowron spent 13.1 hours working on her case prior to or during trial, and 7.7 hours on the Motion. (Docket No. 185, Skowron Decl. Ex. A..) The County claims that 10.0 of these hours are "redundant." (Opp'n at 17.) Plaintiff claims that they are not. (Reply at 10.) The Court notes that the County never identifies the other hours to which these 10.0 hours are redundant. The Court denies the County's request.

### B.   REASONABLE HOURLY RATE

As noted, the County only disputes the reasonableness of attorney Sher's hourly rate of $400. The Court may consider rates customarily charged by attorney, and by attorneys in the community for similar work, possessing similar knowledge, skill, experience, and reputation), Bihun v. AT&T Info. Sys., Inc., 13 Cal.App.4th 976, 997 (1993), disapproved of on other grounds by Lakin v. Watkins Associated Indus., 6 Cal.4th 644 (1993). The County disputes Sher's rate on two grounds: (1) It is not based on the proper local community; and, (2) the appropriate rate must be determined from Sher's fee contract with Plaintiff. (Mot. at 20.)

### 1. Local Community

"[T]he lodestar is the basic fee for comparable legal services in the community." See Ketchum, 24 Cal.4th at 1132. The use of "reasonable rates in the local community … is one of the means of providing some objectivity to the process of determining reasonable attorney fees. Such

1 objectivity is vital to the prestige of the bar and the courts. Nichols, 155 Cal.App.4th at 1243
2 (internal quotations and citations omitted). Here, the parties dispute what constitutes the "local
3 community." The County asserts that Sher's rate should be determined by those found in (a) Lake
4 County, where Plaintiff resides, her claims arose, and Sher performed her legal services, or (b)
5 Mendocino County, where Sher's office is located. Plaintiff counters that her rates should be based
6 on those for the San Francisco Bay Area. As support, both parties rely on Donnell v. United States,
7 682 F.2d 240 (D.C. Cir. 1982).

8 The Court disagrees with the parties' interpretation of Donnell. Donnell holds that when an
9 attorney from one district litigates in another district, the "community" for determining the
10 lodestar, is the district in which the trial court sits, whether it provides higher or lower fees than the
11 attorney's home district. Donnell, 682 F.2d at 251. The Donnell court adopted this rule as it is
12 simple to apply, based on information readily known to a district court, and neutral relative to all
13 parties. Id. The Ninth Circuit has adopted the forum rule, holding that the relevant "community"
14 is the district where the district court sits unless local counsel is unavailable due to a lack of will or
15 sufficient experience, expertise, or specialization. Mendenhall v. Nat'l Transp. Safety Bd., 213
16 F.3d 464, 471 n.5 (9th Cir. 2000); Barjon v. Dalton, 132 F.3d 496, 500-02 (9th Cir. 1997)
17 (upholding use of local Sacramento-Eastern District rates over San Francisco-Northern District
18 rates, where local counsel available); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)
19 (upholding use of San Francisco-Northern District rates, rather than local Sacramento-Eastern
20 District rates, where local counsel unavailable).

21 Under Donnell, Mendenhall, and Barjon, the "local community" in this matter is the
22 Northern District of California. Lake, Mendocino and Alameda Counties lie in this district. Thus,
23 Sher is "local" counsel and she is entitled to local rates. Sher's rate is $400 per hour. In addition,
24 the County has not come forth with any evidence that despite intra-district variances that this rate is
25 unreasonable in this district as a whole. The Court thus finds that this is a "reasonable rate[] in the
26 local community[.]" Nichols, 155 Cal.App.4th at 1243.

27
28

### 2. Sher's Fee Contract

The County asserts that the best evidence of a fair market billing rate for Mendocino County is Sher's hourly fee agreement with Plaintiff. Plaintiff claims that the Court's proper focus is the prevailing rate for comparable legal services. Further, she notes that fee agreements are not good indicators of market rates, especially where clients often cannot pay them, and counsels anticipate fees from fee-shifting statutes if a matter proceeds to trial. The Court first notes that it already has rejected determining a reasonable fee based solely on Mendocino County. Second, it notes that the California Courts have rejected the County's fee agreement argument. Flannery, 26 Cal.4th at 585. As such, the Court finds that Sher's fee contract with Plaintiff is not probative of whether Sher's hourly rate is reasonable (which the Court finds it is).

### C. MULTIPLIER

The purpose in determining a multiplier is for the Court to determine restrospectively "'whether the litigation involved contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services[.]'" Greene, 101 Cal.App.4th at 427 (quoting Ketchum, 24 Cal.4th at 1132). The purpose in determining a multiplier is for the Court to determine restrospectively "'whether the litigation involved contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services[.]'" Greene, 101 Cal.App.4th at 427 (quoting Ketchum, 24 Cal.4th at 1132.

### 1. Contingent Risk

The enhancement for contingent risk brings "the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." Id. at 427. It reflects that "the fair market value of legal services provided . . . is greater than the equivalent noncontingent hourly rate." Horsford, 132 Cal.App.4th at 394-95. An enhancement is not a windfall, but earned compensation in the form of a premium reflecting the risk of nonpayment or delay in payment of attorney fees. Greene, 101 Cal.App.4th at 427.

1   According to Plaintiff, FEHA plaintiffs generally have difficulty hiring counsel, due to a shortage of qualified counsel who can afford to front legal fees and expenses for, as in this case, the years it can take to close them successfully and obtain a fee recovery.  (Mot. at 3.)  She notes that this situation is exacerbated in smaller counties like Lake and Mendocino, and with public entity defendants like the County where punitive damages are unavailable.  Id.  Plaintiff also points out that almost four years ago she tried to resolve this matter informally, through the DFEH, then through mediation.  (Sher Decl. ¶¶ 6-7.)  Though she agreed to a settlement in the mediation, the County Board of Supervisors rejected its counsel's agreement.  (Id. ¶¶ 7-8.)  Plaintiff also attempted to settle through ENE, but the County refused, claiming it would prevail on a motion for summary judgment.  (Id. ¶¶ 10-11.)  Then, after two years of discovery, and losing its summary judgment motion, it still refused to settle in the settlement conference, believing it would prevail at trial.  (Id. ¶¶ 11-12, 17.)

The County disputes imposing a contingent risk enhancement on two grounds.  First, the County asserts that Plaintiff already used contingent risk to enhance her lodestar.  (Opp'n at 10-11.)  The County, however, does not point to where she purportedly did so in her moving papers.  While Plaintiff incorporated her counsels' skill and that of comparable attorneys in determining their rates, (Mot. at 20-21), there is no indication that she took into account contingent risk.  Equally uncompelling is the County's assertion that Weeks v. Baker & McKenzie, 63 Cal.App.4th 1128 (1998) forecloses an enhancement for risk contingency.  (Opp'n at 11-12.)  As Plaintiff correctly points out, subsequent decisions have rejected Weeks.  See Ketchum, 24 Cal.4th at 1131-32; Horsford, 132 Cal.App.4th at 400 n.11; Greene, 101 Cal.App.4th at 426-28.

**2.   Results**

Plaintiff also seeks an enhancement for exceptional results.  As support, she proffered declarations from two attorneys with extensive employment law litigation experience, one of whom also reviewed verdict databases, and each of which declares that the $1.67 million verdict in this matter was an exceptional result.  The Court properly may consider Plaintiff's results in determining whether to apply a multiplier.  Serrano, 20 Cal.3d at 48; Flannery, 26 Cal.4th at 584.

The County avers that this factor already was included in the lodestar. (Opp'n at 21-22.) That is incorrect. Plaintiff, at the end of her analysis of the hours spent litigating this matter, merely notes that she obtained an "excellent recovery," one which made her whole as the FEHA intends. (Mot. at 19.) Despite the County's suggestions to the contrary, Plaintiff did not rely on her recovery to "enhance" the lodestar.

The County also argues that Plaintiff is not entitled to a results enhancement, as she failed to succeed on all her claims. (Opp'n at 12-14.) While true, the County never explains why this makes Plaintiff's actual results "unexceptional." In fact, the County never mentions, much less addresses, her experts' declarations. The County has thus failed to show that Plaintiff is not entitled to an enhancement for exceptional results.

### 3. Skill and Difficulty

Plaintiff also contends that an enhancement is justified based on the difficulty of this case and the exceptional skill exhibited by her attorneys. Under California law, the Court may consider "(1) the novelty and difficulty of the questions involved, [and] (2) the skill displayed in presenting them…." Nichols, 155 Cal.App.4th at 1240. The record shows that the County aggressively litigated this case and rebuffed Plaintiff's efforts to settle the action. Instead, the County chose to "roll the dice" by taking this case to trial - and lost. Having take such a tact, the County is not in a position to now argue after the fact that this was a simple, easily litigated case.

### 4. Preclusion of Other Employment

Plaintiff contends that this case consumed an "enormous" amount of counsels' time and precluded counsels' ability to accept other work. (Murphy Decl. ¶ 28; Sher Decl. ¶ 14; Redburn Decl. ¶ 20; Mot. at 24.) In addition, counsel had to forego taking on other cases and forego fees until after this case had concluded.

The County first argues, without any supporting analysis, that Plaintiff already incorporated this factor in determining her attorneys' hourly rates. (Opp'n at 22.) The record does not support that assertion. Next, the County contends that under Ramos v. Countrywide Home Loans, Inc., 82 Cal.App.4th 615, 627 (2000), counsel was required to provide a more detailed declaration. (Opp'n at 16; 22-27.) Ramos court held that the trial judge, not the plaintiff's counsel, had failed to

provide any information in his order as to why it had multiplied the lodestar. 82 Cal.App.4th at 624, 626-27. Ramos has no application here. The Court finds that Sher's declaration supports an enhancement for the preclusion of employment.

### 5. Public Interest

Plaintiff asserts that an enhancement is warranted here, as her suit will benefit other County employees and employees in general. (Mot. at 24-25.) However, Plaintiff does not support her contention with any legal authority. In addition, the Court notes that the same could be said for any lawsuit brought by a public employee against a public entity. The benefit of Plaintiff's suit benefitted inured to her as opposed to the general public. An enhancement on this ground is not warranted.

### 6. Summary of Factors

Based on the foregoing factors, Plaintiff requests a multiplier of two. (Mot. at 12.) Plaintiff also provides declarations from two experts who opined that under the facts of this litigation and based on cases in this practice area, a multiplier of two is reasonable. See Crommie v. Cal. Pub. Util. Comm'n, 840 F. Supp. 719 (N.D. Cal. 1994), aff'd in part sub nom Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470 (9th Cir. 1995); Fadhl v. City & County of San Francisco, 859 F.2d 649 (9th Cir. 1986). Taking into account all of the factors discussed above, the Court in its discretion, concludes that a multiplier is fair, reasonable and warranted in this case.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Attorneys' Fees (Docket 173, 174) is GRANTED in part and DENIED in part. The Court awards attorneys' fees of $735,500.50 as shown in Table attached hereto.

IT IS SO ORDERED.

Dated: March 27, 2009

*Saundra B Armstrong*
Hon. Saundra Brown Armstrong
United States District Judge

- 17 -

### TABLE 1

**Attorneys' Fees Claimed and Awarded**

| Name | Hours | Change | Rate | Claimed | Awarded |
|---|---|---|---|---|---|
| Susan Sher, Esq. | 695.90 | (253.72) | $400/hr | $278,360.00 | $176,872.00 |
| Susan Sher, Esq. (clerical) | 11.15 | (11.15) | $125/hr | $1,393.75 | $0.00 |
| Stephen M. Murphy, Esq. | 252 | | $515/hr | $129,780.00 | $129,780.00 |
| Chris R. Redburn, Esq. | 71 | | $515/hr | $36,565.00 | $36,565.00 |
| Jeremy A. Graham, Esq. | 24.7 | | $230/hr | $5,681.00 | $5,681.00 |
| Martin M. Skowron | 13.1 | | $125/hr | $1,637.50 | $1,637.50 |
| **LODESTAR** | | | | $453,417.25 | $350,535.50 |
| **MULTIPLIER (2.0)** | | | | $906,834.50 | $701,071.00 |
| | | | | | |
| **FEE MOTION:** | | | | | |
| Susan Sher, Esq. | 44.1 | | $400/hr | $17,640.00 | $17,640.00 |
| Stephen M. Murphy, Esq. | 7.4 | | $515/hr | $3,811.00 | $3,811.00 |
| Jeremy A. Graham, Esq. | 39.8 | | $230/hr | $9,154.00 | $9,154.00 |
| Martin M. Skowron | 7.7 | | $125/hr | $962.50 | $962.50 |
| **LODESTAR** | | | | $31,567.50 | $31,567.50 |
| | | | | | |
| Out of Pocket Expenses | | | | $2,862.00 | $2,862.00 |
| **TOTAL** | | | | $941,264.00 | **$735,500.50** |